**Bernard L. MIDDLETON, Plaintiff,**

v.

**William B. GOULD IV, Chairman, National Labor Relations Board, and Fred Feinstein, General Counsel, National Labor Relations Board, Defendants.**

**Civil Action No. H–94–1998.**

United States District Court,
S.D. Texas,
Houston Division.

April 15, 1996.

---

Bernard L. Middleton, Houston, TX, Ronald J. Merriweather, Houston, TX, for Bernard L. Middleton.

Michele Zingaro, U.S. Attorneys Office, Houston, TX, for William B. Gould, IV and Fred Feinstein.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is Defendants' **Motion for Summary Judgment** [Doc. # 14]. For the reasons discussed below, the Court finds that the motion is meritorious and should be **GRANTED.**

### I. FACTUAL BACKGROUND

Plaintiff Bernard Middleton, an African–American attorney formerly employed by the National Labor Relations Board ("NLRB"), filed this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., on June 13, 1994. Plaintiff alleges that the NLRB discriminated against him because of his race and his gender, and retaliated against him for having filed prior complaints with the Equal Employment Opportunity Office ("EEO") of the NLRB.

Plaintiff's complaints were filed with the EEO on or about May 14, 1991 and September 10, 1991 and investigated by an EEO investigator, who found no discrimination by the NLRB. The Final Agency Decision (FAD) was sent to Plaintiff by certified mail on December 6, 1993 and again on January 5, 1994. On both occasions, the FAD was sent to the post office box which Plaintiff had designated as his mailing address and, on both occasions, Plaintiff failed to claim his certified mail. The FAD was subsequently hand delivered to Plaintiff on March 14, 1994.

Defendant argues that summary judgment must be granted in its favor because Plaintiff failed to file suit within 90 days of receiving the FAD. Defendant further argues that Plaintiff has not made out a *prima facie* case of discrimination with regard to his 1991 performance appraisal, and that he has not met his burden of proving that Defendants were motivated by discriminatory intent, or that the proffered reasons for the challenged activity were a pretext for discrimination. The Court need not address Defendants' substantive arguments because it finds that Plaintiff's action is time-barred.

### II. SUMMARY JUDGMENT STANDARD

In deciding a motion for summary judgment, the Court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Bozé v. Branstetter,* 912 F.2d 801, 804 (5th Cir.1990). The facts are to be reviewed with all inferences drawn in favor of the party opposing the motion. *Bozé,* 912 F.2d at 804 (citing *Reid v. State Farm Mut. Auto Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986)). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.,* 66 F.3d 89, 92 (5th Cir.), *revised on other grounds upon denial of reh'g,* 70 F.3d 26 (5th Cir.1995).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue with respect to those issues on which the movant bears the burden of proof at trial. For any matter on which the nonmovant carries the burden of proof at trial, however, the movant may, by merely pointing to the absence of evidence supporting the essential elements of the nonmovant's case, shift to the nonmovant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact so as to warrant a trial. *Transamerica Ins. Co. v. Avenell,* 66 F.3d 715, 718–19 (5th Cir.1995); *Douglass v. United Servs. Auto. Ass'n,* 65 F.3d 452, 459 (5th Cir.1995), *revised on other grounds,* 79 F.3d 1415 (5th Cir.1996) (en banc); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Douglass,* 65

F.3d at 459; *Little,* 37 F.3d at 1075. In the absence of any proof, the court will not assume that the nonmovant could or would prove the necessary facts. *McCallum Highlands,* 66 F.3d at 92; *Little,* 37 F.3d at 1075 (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 3188–89, 111 L.Ed.2d 695 (1990)). Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Little,* 37 F.3d at 1075 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552).

### III. DISCUSSION

A federal employee alleging employment discrimination has 90 days from "receipt of notice of final [agency] action" in which to file a Title VII action in federal court. 42 U.S.C. § 2000e–16(c). In the case at bar, the FAD was mailed to Plaintiff on December 6, 1993 and again on January 5, 1994. On both occasions, it was sent by certified mail to the address which Plaintiff provided to the NLRB, a post office box in the Federal Courthouse in Houston, Texas. Defendants' Motion for Summary Judgment ("Defendants' Motion"), Exh. B (Affidavit of Peggy Jones), at 2. On December 25, 1993, the post office returned the first letter as "unclaimed." Notations on the envelope indicate that certified mail notices were left in Plaintiff's box on December 10 and December 15, 1993. Defendants' Motion, Exh. 4.

On January 5, 1994, the FAD was remailed to Plaintiff at the same address, once again by certified mail. The post office returned it on January 27, 1994, with notations on the envelope indicating that notices had been left in Plaintiff's box on January 12 and January 17, 1994. Defendants' Motion, Exh. 5. Finally on March 9, 1994, the FAD was mailed to the resident officer of the NLRB office where Plaintiff worked, and was hand delivered to him on March 14, 1994. Defendants' Motion, Exh. B (Affidavit of Peggy Jones), at 2. Plaintiff filed this lawsuit on June 13, 1994, within 90 days of his actual receipt of the FAD, but more than three months after receipt of multiple certified mail notices in December and January.

By his own admission, Plaintiff does not contest the mailing dates of the FAD. Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response"), at 7. Plaintiff instead argues that, despite diligent inquiry, he had no actual or constructive notice that the FAD had or was about to be issued; that he was out sick, on vacation or on Christmas holiday during the relevant time period in December (and therefore unable to check his post office box); and that he was busy preparing for and arguing a case in Beaumont, Texas and therefore unable to check his mail box during the relevant time period in January. None of these reasons is sufficient in the Court's view to justify tolling the 90–day statute of limitations, which was triggered on December 10, 1993, when Plaintiff received the first of four certified mail notices regarding the FAD. *See infra* at 439–41.

Commencing an action within 90 days of receipt of a FAD is not a jurisdictional prerequisite; rather, the 90–day requirement is akin to a statute of limitations and, as such, may be subject to tolling and waiver. *See Espinoza v. Missouri Pac. R.R. Co.,* 754 F.2d 1247, 1249 n. 1 (5th Cir.1985) (citations omitted). Equitable tolling applies to the statutory time limits under Title VII. However, "[f]ederal courts have typically extended equitable relief only sparingly." *Rowe v. Sullivan,* 967 F.2d 186, 192 (5th Cir.1992) (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990)). Thus, courts have allowed equitable tolling

> in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadlines to pass.

*Id.* Courts have been "much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Irwin,* 498 U.S. at 96, 111 S.Ct. at 458.

█ Plaintiff had from December 10, 1993 through December 24, 1993 and from January 12, 1994 through January 26, 1994 to walk the two blocks from his office in downtown Houston to his post office box in the Federal Courthouse. Nevertheless, for the reasons discussed below, he failed to do so. Because Plaintiff is an attorney and, by his own admission, aware of the 90–day limitations period under Title VII, Defendants' Motion, Exh. D (Deposition of Bernard Middleton), at 32, his late filing is not excused by a lack of sophistication with procedural requirements. *See Rowe*, 967 F.2d at 192 (equitable tolling may apply if a claimant, due to his lack of sophistication, does not understand the procedural requirements of Title VII claims). Nor did Plaintiff file a defective pleading during the limitations period or allege that he was induced by Defendants' misconduct into allowing the filing deadline to pass. *Id.* Therefore, equitable tolling is inappropriate in this case. Nevertheless, because Plaintiff argues that the limitations period was not triggered until he was personally handed a copy of the FAD on March 14, 1994 (and, by implication, that equitable tolling is inapplicable or unnecessary), the Court must determine when notice was "received" by Plaintiff within the meaning of Section 2000e–16(c).

█ *Plaintiff's Knowledge of the Final Agency Decision.*—Plaintiff argues that, having filed his EEO complaint some two and a half years earlier, he had no notice in December 1993 or January 1994 that the FAD was about to issue or had been issued. Plaintiff further argues that, once he discovered that certified mail had been returned by the post office in December, he called the EEO office to make inquiries, and was told by an investigator that the EEO had not sent him any certified mail. Finally, Plaintiff argues that, having previously sent official correspondence to his office, Defendants failed to contact him at his office during the relevant time period in December 1993 and January 1994 to notify him that the FAD had been issued.

The Court finds these arguments unpersuasive. The EEO's FAD was delayed. However, Plaintiff has cited and the Court is aware of no authority for the proposition that an agency is obligated to render a FAD within a fixed period of time. Nor has Plaintiff established that notice independent of the final decision ever is required under Title VII. On the contrary, the case law makes clear that it is the complainant rather than the agency who must "assume some minimum responsibility for [the] orderly and expeditious resolution of his dispute." *Espinoza*, 754 F.2d at 1250 n. 3 (citations omitted). Therefore, even if the EEO had previously sent Plaintiff correspondence at his office, Plaintiff was obligated to check his post office box sufficiently frequently to avoid a limitations bar. If it was too inconvenient to walk to the post office, he could have provided the EEO with his home address, or designated his office address as the address where the FAD should be sent.

The Court, for the purposes of the pending motion, accepts as true Plaintiff's allegation that there was a miscommunication regarding the status of the FAD, this does not relieve Plaintiff of responsibility with respect to the resolution of this dispute. For all Plaintiff knew, the FAD could have been issued the day after his alleged conversation with the EEO investigator; in any event, he was under an ongoing obligation to check his post office box so long as the final decision was still pending. Moreover, by Plaintiff's own admission, the EEO investigator who allegedly told him that the FAD had not yet been issued was not the investigator handling the underlying complaints in *this* case. Plaintiff's Response (Deposition of Bernard Middleton), at 36.[1] Plaintiff's assumption that his current investigator "would know what was going on with [all previously filed complaints]" may have been unreasonable. In any event, once he learned during a subsequent conversation with the same individual that the FAD had in fact been issued, Plaintiff took no action to try to secure a copy (including, apparently, visiting his post

---

1. Plaintiff had filed and there was pending more than one EEO complaint with the EEO of the NLRB.

office box anytime during the month of January). *Id.* at 38.

It cannot be said, therefore, that Plaintiff failed to receive the FAD through no fault of his own. *See Espinoza,* 754 F.2d at 1250.

■ *Receipt of Notice in December 1993.*—Plaintiff appears to argue that the limitations period was not triggered in December because, although he received certified mail notices on the 10th and the 15th, he did not work a full day "with potential to check his post office box during the relevant time period." (Plaintiff allegedly had surgery on December 10, 1995 and was out sick, on vacation or on Christmas holiday from that date through January 3, 1994.) Plaintiff's Response, at 8. While sympathetic to Plaintiff's medical condition, the Court nevertheless holds that delivery of the first certified mail notice on December 10th triggered the 90–day limitations period. *See Watts–Means v. Prince George's Family Crisis Center,* 7 F.3d 40, 42 (4th Cir.1993) (the limitations period in a Title VII action is triggered when the Postal Service delivers notice to a plaintiff that the right-to-sue letter is available for pickup, and not when the letter is actually picked up).[2] *See also Million v. Frank,* 47 F.3d 385 (10th Cir.1995) (receipt of notice of right-to-sue letter by former federal employee's wife triggered start of limitations period); *Rowe v. Sullivan,* 967 F.2d 186 (5th Cir.1992) (receipt of agency decision by federal employee's wife triggered time for employee to file suit against federal government); *Hunter v. Stephenson Roofing, Inc.,* 790 F.2d 472 (6th Cir.1986) (actual receipt of notice of right-to-sue letter is not required in order to commence running of 90–day filing period).

Moreover, the Court finds that equitable tolling is not appropriate in the case at bar because, despite alleging that he was unable to visit his post office box from December 10, 1993 to January 3, 1994, Plaintiff's summary judgment evidence indicates that he actually worked four to six hours per day from Tuesday, December 14, 1993 through Friday, December 17, 1993. Plaintiff's Response, Exh. D (Plaintiff's Time Sheet for the Pay Period Dec. 12–Dec. 25, 1993). Therefore, Plaintiff was available to check his post office box on at least four days in December and, had he done so during that period, would have discovered the certified mail notice.[3]

■ *Receipt of Notice in January 1994.*—Even if equitable tolling were appropriate during the December period, there is no basis on which to toll the limitations period during the month of January. Plaintiff's explanation for his failure to visit the post office during that period—that he was busy preparing for a trial in Beaumont, Texas, where he spent a total of ten days between the 12th and the 28th—is simply insufficient. As the Fifth Circuit has noted of Title VII's limitations period, "a 'claimant should be required to assume some minimum responsibility for an orderly and expeditious resolution of his dispute,' and should not 'enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless.'" *Espinoza,* 754 F.2d at 1250 (citations omitted). The Court finds, therefore, that an unusually hectic work schedule did not excuse Plaintiff's duty to check his post office box on a regular basis. Moreover, even if work-related absence were an acceptable reason for not checking his mail, Plaintiff was actually in Houston from the 14th through the 17th and from the 20th through the 21st. Therefore, there were at least four

---

**2.** The Court agrees with the Fourth Circuit that requiring actual pickup (or, in this case, hand delivery) "would allow some plaintiffs open-ended time extension, subject to manipulation at will." *Watts–Means,* 7 F.3d at 42. Given the extremely short period in which to file suit under Section 2000e–16(c), this cannot be what Congress intended in enacting Title VII. Moreover, any true injustices created by the Fourth Circuit's rule may be remedied by equitable tolling. *Id.*

**3.** Plaintiff fails to explain why, if he was well enough to work four to six hours per day during this four day period, he was too ill to walk two blocks to the Federal Courthouse and check his post office box. Therefore, the Court does not find that fortuitous circumstances beyond his control prevented Plaintiff from learning of the FAD. *See Espinoza,* 754 F.2d at 1251 (finding no basis for equitable tolling where plaintiff did not allege that fortuitous circumstances beyond his control prevented him from learning of his right to sue).

week days on which he could have checked his post office box. That he was too busy to leave the office does not justify equitable tolling, a remedy exercised "only sparingly" by federal courts. *Irwin*, 498 U.S. at 96, 111 S.Ct. at 457–58.

Finally, even assuming that the 90–day period did not begin to run until the date of one of the January 1994 notices, Plaintiff had until April 1994 to file suit. His failure to file in April, despite clear knowledge of the need to act, makes his arguments patently incorrect. Plaintiff received an actual copy of the decision on March 14, 1996 and thus had a month to act.

## IV. *CONCLUSION*

The Court finds that the limitations period in this case was triggered on December 10, 1993, and that equitable tolling is not justified on the basis of illness, business travel, or work. Because Plaintiff did not file suit in federal court until June 13, 1994, his action is time-barred, and Defendant's Motion for Summary Judgment is therefore **GRANTED.** It is so **ORDERED.**