Glena D. **GARRISON**, Plaintiff,

v.

**TOWN OF BETHANY BEACH,**
**Defendant.**

**No. Civ.A. 99–451 GMS.**

United States District Court,
D. Delaware.

March 2, 2001.

Barbara H. Stratton, Knepper & Stratton, Wilmington, Delaware, for plaintiff.

Scott H. Holt, Young Conway Stargatt & Taylor, LLP, Wilmington, Delaware, for defendant.

## MEMORANDUM OPINION

SLEET, District Judge.

## I. INTRODUCTION

On July 16, 1999, Glenda Garrison filed a complaint against the Town of Bethany Beach, Delaware (the "Town") alleging job discrimination based on race in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (1994) (D.I.1). The Town timely filed an answer (D.I.4). Subsequently, the parties raised a potential statute of limitations issue and requested limited discovery and briefing according to an agreed upon schedule. After considering the submissions of the parties (D.I.33, 34, 36), the court conducted a teleconference on May 24, 2000, entertained limited oral argument, and reserved its decision. Since the court finds that Garrison did not file his complaint within the applicable statute of limitations period and that there are no equitable considerations to toll the statute, it will grant the Town's informal motion for summary judgment.[1]

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

1. Although the docket does not contain any pending motions, the court will consider the Town to have filed a motion for summary judgment. First, the case law supports this approach. *See, e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that time limits in Title VII are not jurisdictional but are instead like statutes of limitation and therefore subject to summary judgment). Second, Garrison believes the summary judgment standard applies to this situation (D.I.34) and the Town does not appear to contest this (D.I.33, 36). Third, the court has considered matters outside of the pleadings and given the parties ample notice of its intentions. Neither party has requested time to supplement the record before the court. *See, e.g., In re Rockefeller Center Properties Sec. Litig.,* 184 F.3d 280, 287–89 (3rd Cir.1999) (finding court has absolute discretion to consider all record material); *Rose v. Bartle,* 871 F.2d 331, 339–43 (3rd Cir.1989) (holding court may convert motion to dismiss into summary judgment upon proper notice to parties and allowing after reasonable time to present additional evidence).

Fed.R.Civ.P. 56(c). An issue is "genuine" if a reasonable jury could return a verdict for the plaintiff given the evidence. *See Blizzard v. Hastings*, 886 F.Supp. 405, 408 (D.Del.1995). An issue is "material" only if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When deciding a motion for summary judgment, the court must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Pacitti v. Macy's*, 193 F.3d 766, 772 (3d Cir.1999).

## III. BACKGROUND

Garrison is a black man who was employed by the Town's public works department from 1985 until April, 1999. According to Garrison, his white supervisors frequently referred to him and other black employees as "niggers." Moreover, Garrison claims his supervisors tolerated a racially hostile working environment by failing to take any action against white employees who made similar disparaging comments, such as "When slaves were around, those were the good old days" and "I don't have to take this from that nigger." Garrison also contends that his supervisors applied a double standard by treating whites more favorably than blacks. For example, black workers were apparently assigned to the "dirtiest" jobs like garbage collection, cleaning ditches, or filling in holes dug for water taps. In contrast, their white counterparts routinely received more favorable assignments like driving the garbage trucks or operating the back hoe. Finally, Garrison claims that when he asked for the train-

ing which would enable him to drive the garbage trucks or operate the back hoe, his requests were denied.

Based on the alleged conduct, Garrison and a former co-worker, John Boyer, filed charges of discrimination against the Town with the Equal Employment Opportunity Commission (the "EEOC") on June 25, 1997. In October, 1998, Diane DeCoursey, the EEOC investigator assigned to the case, met with Garrison. She subsequently conducted a fact finding conference on October 21, 1998. Although DeCoursey made a settlement proposal, the Town's Counsel informed her, via letter on December 2, 1998, that it had decided to reject the offer.

Although the precise date is unclear, Garrison stated at his deposition that in late December, 1998 or early January, 1999,[2] DeCoursey informed him that (1) the Town rejected the proposal, (2) the EEOC did not find either party at fault, (3) the EEOC would no longer be pursuing the case, (4) he would receive a letter in the mail in three to six weeks and (5) he had 90 days from the receipt of the letter to file a complaint in court. On February 1, 1999, the Town received a copy of Garrison's right to sue letter (the letter was dated January 27, 1999).[3] Boyer received his right to sue letter (also dated January 27, 1999) before February 15, 1999. DeCoursey submitted Garrison's case for closure on January 25, 1999.

At his deposition, Garrison stated he did not receive a right to sue letter in January or February, 1999.[4] Although the record is unclear, Garrison began calling the EEOC in the beginning of February, 1999 regarding his right to sue letter. Accord-

---

**2.** At Garrison's deposition, the parties disputed what the record revealed. As demonstrated below, these discrepancies are immaterial since either date was well in advance of 90 days from the filing of the complaint.

**3.** The Town's attorney received a copy of the letter on January 30, 1999.

**4.** The parties argue whether Garrison can plausibly claim he never received a letter in

light of the conduct of the U.S. Postal Service and his living at the same address throughout the relevant period. At this stage of the proceedings, the court declines to engage in such speculation and assumes for the purposes of this motion that Garrison did not receive his right to sue letter in January or February, 1999.

ing to his deposition testimony, he left two messages for DeCoursey stating that he had not received his right to sue letter and asking about its status.[5] Around the end of February or the beginning of March, 1999, Garrison finally spoke to DeCoursey and told her that he had not yet received his right to sue letter. DeCoursey told him that although he should have already received his letter, she would "get on it" and "make sure that it would get out."

After his conversation with DeCoursey regarding his right to sue letter, he later spoke to her seeking his EEOC file under the Freedom of Information Act (FOIA). According to the record, the conversation must have occurred on or before March 23, 1999.[6] When he spoke to DeCoursey, Garrison did not inquire about his right to sue letter, even though time had elapsed since she said she was going to send him another copy. At his deposition, Garrison explained this failure by stating that he knew he did not need a right to sue letter to file suit against the Town.[7]

During the conversation, DeCoursey told Garrison that he needed to speak with another EEOC employee regarding his FOIA request. After an exchange of letters, and Garrison sending the EEOC money for photocopying expenses, the EEOC sent him his file on April 8, 1999.[8] Garrison does not dispute that he received his EEOC file. Upon receiving his EEOC file, Garrison stated that his only concern was reviewing DeCoursey's notes from the fact finding conference. He did not look at, nor have any interest in, any of the other documents contained in his EEOC

file. Specifically, he did not look for a copy of his right to sue letter. It is undisputed that a copy of Garrison's right to sue letter was included in his EEOC file.

At some point after he received his EEOC file, Garrison again contacted DeCoursey regarding his right to sue letter. This conversation took place between April 16 and April 19, 1999. On April 23, 1999, Garrison received a copy of his right to sue letter from the EEOC dated January 27, 1999. On July 16, 1999, Garrison filed suit against the Town.

## IV. DISCUSSION

### 1. Garrison Had Notice Within the Meaning of 42 U.S.C. § 2000e–5(f)(1)

When the EEOC dismisses a charge or decides to take no action, it is required to notify the aggrieved party. *See* 42 U.S.C. § 2000e–5(f)(1). Generally, the issuance of a right to sue letter by the EEOC ensures that a plaintiff has notice of the EEOC's decision not to pursue the complaint and the necessity filing a complaint in federal court for further redress. In the absence of evidence to the contrary, it is presumed that the plaintiffs receive their right to sue letter three days after mailing. *See* Fed.R.Civ.P. 6(e); *see also Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) (stating that plaintiff may rebut presumption regarding receipt of right to sue letter with competent evidence). Plaintiffs have 90 days from the date they receive a right to sue letter to file a suit in federal court. Without evi-

---

**5.** Garrison testified that he called DeCoursey approximately four other times but that he would get an answering machine message. He stated that he decided not to leave additional messages and wanted to speak to her directly.

**6.** On this date, the EEOC responded to Garrison's FOIA request via a written letter.

**7.** At his deposition, Garrison stated:
  [A]t that point in time I felt as though it was going to be left up to the attorney. I was told at a certain point that whether I re-

ceived the letter or not, I could acquire an attorney even without the letter. If I just took it upon myself to hire an attorney, file suit against the Town, I wouldn't have needed the letter and let him or her do whatever they needed to do.

**8.** Although the April 8, 1999 letter from the EEOC states an internal memorandum was not included in the reply to Garrison's FOIA request, its omission does not appear to be material to this case.

dence that a plaintiff did not receive notice of a right to sue, any attempt to file a complaint even one day after the 90 day time period must result in dismissal. *See Mosel v. Hills Department Store, Inc.,* 789 F.2d 251, 253 (3d Cir.1986) (citing cases); *see also Baldwin Cty. Welcome Ctr., v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) (concluding that "procedural requirements established by Congress for gaining access to federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

Although the notice by the EEOC may take the form of a right to sue letter, there is no such statutory requirement. *See* 42 U.S.C. § 2000e–5(f)(1) (stating that the EEOC "shall ... *notify* the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent") (emphasis added); *see also Mosel,* 789 F.2d at 252–53 (finding that § 2000e–5(f)(1) "has been construed liberally such that time for filing complaint begins to run when plaintiff has notice of EEOC decision; this *usually* occurs on the date he receives a right-to-sue letter") (emphasis added); *Cook v. Providence Hosp.,* 820 F.2d 176, 178 (6th Cir.1987) (concluding that allowing plaintiff to claim lack of knowledge of EEOC determination where EEOC official told plaintiff her file was closed and right to sue notice had been issued would be an "illogical, absurd result"); *cf.* 29 C.F.R. § 1601.28(a)(2) (stating that EEOC *may* issue notice at any time prior to expiration of 180 days from date charge originally was filed) (emphasis added). In a similar situation to this case, another court stated:

> Both ... [of the plaintiff's] arguments [regarding the beginning of the 90 day period] focus on the receipt of the *determination letter* rather than receipt of *notice* of the EEOC decision. While the Third Circuit has acknowledged that notice *usually* occurs on the date the plaintiff receives the determination letter, it does not direct that notice must be received in this (or any specific) manner. Where ... the written notice was never received after passage of considerable time, I[sic] will focus my inquiry on whether ... [the plaintiff] received any notice on any date and, if so, whether such notice should be deemed to suffice for purposes of the statute.

*McCullough v. CSX Transp. R.R. Co.,* Civ.A. No. 94–3102, 1995 WL 141494, at *2 (E.D.Pa. Mar.31, 1995) (citing *Mosel,* 789 F.2d at 252) (internal quotations and citations omitted) (emphasis in original).

Therefore, the crucial issue before the court is what did Garrison know and when did he know it? More specifically, the court must answer the following questions: (1) When did Garrison receive actual notice that the EEOC was not going to pursue his case and that he could sue the Town? (2) Did he have this notice *before* April 18, 1999—90 days prior to the filing of the complaint? and (3) Are there any equitable considerations which would allow the court to toll the 90 day statute of limitations period? If the court finds that Garrison had actual notice equivalent to the information contained in his right to sue letter and failed to bring suit within 90 days of such notice then the court must grant summary judgment in favor of the Town.[9]

9. Garrison also argues that his complaint is timely since he never received the proper notice. He points to 42 U.S.C. § 2000e–5(f)(2) and argues that since the Town is a "government or political subdivision" that the EEOC was required to refer the matter to the Attorney General who can either institute suit against the town or send Garrison notice of his right to sue. Since "the statutory prerequisites have not been met," Garrison urges the court to either exercise its equitable pow-ers to permit the case to proceed or remand the case to the EEOC with directions to refer it to the Attorney General. This argument is without merit. Regardless of who the parties are, the EEOC, not the Department of Justice, is the proper agency to notify the parties if its decision to dismiss the case. *See* 42 U.S.C. § 2000e–5(b); 29 C.F.R. § 1601.24(d). Contrary to Garrison's assertions, the EEOC's decision to dismiss the action did not warrant it referring it to the Attorney General. *See* 29

There is no dispute that the EEOC issued Garrison a right to sue letter on January 27, 1999. Ordinarily, the court would presume Garrison actually received the letter three days later, on January 30, 1999. Garrison, however, offers evidence to rebut this presumption. Notwithstanding the fact that the EEOC had the correct address for Garrison on file and that it successfully sent him other mail to the same address, Garrison claims that he never received his right to sue letter. Since he did not actually receive his right to sue letter until April 23, 1999, Garrison contends that he timely instituted his suit.

The flaw in Garrison's syllogism is that it places excessive reliance on the delivery of his right to sue letter at his home address. Although the record is less than clear as to the specific dates of Garrison's conversations with DeCoursey and the content of each one, the court finds that prior to April 18, 1999, Garrison actually knew that the EEOC was not pursuing his complaint, that he could sue the Town in federal court, and that he did not need actual receipt of his right to sue letter to do so.

▮ Even reading the record in the light most favorable to Garrison, the following facts emerge. DeCoursey informed Garrison in late December, 1998 or early January, 1999 that his case was going to be closed and he could expect a right to

sue letter in a few weeks. Upon not receiving his right to sue letter, Garrison called DeCoursey on several occasions, leaving messages only some of time in which he requested a copy of his right to sue letter. When Garrison finally spoke to DeCoursey in the end of February or the beginning of March, 1999, she informed him that although she would mail him a copy of his right to sue letter, he did not need it to institute suit. Indeed, Garrison stated that he had retained counsel by this time and that he believed the right to sue letter was unnecessary. Therefore, it is beyond dispute that prior to April 18, 1999, Garrison actually knew of the EEOC's decision not to proceed on his complaint and that he could sue in federal court.[10]

In this case, permitting Garrison to evade the 90 day statute of limitations by claiming that only actual, physical possession of a right to sue letter is required would nullify Congressional intent apparent in 42 U.S.C. § 2000e–5(f)(1) and upset the balance of interests. The Town received its copy of Garrison's right to sue letter on February 1, 1999. It had no reason to expect that Garrison did not receive a copy of the letter as well. It was not until the filing of the complaint on July 16, 2000 that it had notice of a suit against it. Allowing Garrison's suit to proceed under these circumstances not only contra-

C.F.R. § 1601.24(d) (stating the EEOC will issue notice "when there has been a dismissal of a charge"). This section (unlike § 1601.24(a)(2)) does not contain language requiring a finding of "no reasonable cause" for dismissal. At minimum, Garrison does not explain why the court should read the requirements of § 1601.28(a)(2) into § 1601.28(d). Finally, even if the court were to read such a limitation, it remains unconvinced that the regulation is unconstitutional. See, e.g., Johnson v. Cook Composites and Polymers, Inc., Civ.A. No. 99–4916–JEI, 2000 WL 249251, at *5–*7 (D.N.J. Mar.3, 2000) (discussing cases).

**10.** Garrison may not complain that an early comment from DeCoursey that he had 90 days from the receipt of his right to sue letter, in conjunction with his pro se status, prevent-

ed him from bringing suit. First, DeCoursey also told Garrison that he did not need a letter to institute a lawsuit. Second, Garrison was represented by counsel prior to April 19, 2000 (indeed, he had "conversations" with counsel beginning in October, 1998). Finally, misstatements of the law by EEOC personnel do not necessarily require equitable tolling of a statute of limitations. See Camack v. Hardee's Food Sys. Inc., 410 F.Supp. 469, 474 (1976) (M.D.N.C.1976) (concluding "that equity should not force a defendant innocent of deception to suffer loss of a statutory immunity simply because a third party either deliberately or negligently misled the plaintiff" since plaintiff may have a cause of action against EEOC officials and "it would be grossly inequitable to penalize the potenti[al] defendant for the errors of a third party").

venes the spirit of 42 U.S.C. § 2000e–5(f)(1), but it is also unfair to the Town. As the *McCullough* court aptly stated:

> This is not the usual situation in which the plaintiff is justified in awaiting receipt of the letter, and accordingly I do not feel constrained to apply the usually generous construction of the statute which equates the giving of notice with receipt of the determination letter. I will not use the liberal reading that permits the plaintiffs to await the certainty of receipt of the letter to undermine the certainly provided by the limitations period established by the statute.

651 So.2d 690, 1995 WL 141498, at *4; *see also Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) (stating that "experience teaches that the strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law"). On these facts, allowing Garrison to evade the statute of limitations requirement would result in "a manipulable open-ended time extension which could render the statutory limitation meaningless". *See, e.g., Scholar v. Pacific Bell,* 963 F.2d 264, 267–68 (9th Cir.1992); *Lomans v. Monmouth Chem. Dependency Ctr.,* Civ.A. No. 91–45580–CSF, 1992 WL 281107, at *3 (D.N.J. Oct.5, 1992).

In addition, actual, physical possession is not necessary; courts have found constructive receipt where a plaintiff was on notice that the right to sue letter was forthcoming but did not actually physically possess it. *See, e.g., Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 558–59 & n. 11 (6th Cir.2000) (holding that plaintiff was in constructive receipt since she knew, or suspected, that certified mail delivery contained right to sue letter) (citing cases); *Espinoza v. Missouri Pacific RR. Co.,* 754 F.2d 1247, 1248–50 (5th Cir.1985) (concluding that mere fact employee was out of town when right to sue letter arrived at his home did not serve to toll 90–day period within

which to file civil discrimination action and suit filed 92 days after delivery of letter was untimely).

Even if the court were to overlook the oral notice Garrison received regarding the issuance of his right to sue letter and the attendant rights, the record demonstrates that Garrison received an actual copy of his right to sue letter on or about April 8, 1999. In an attempt to overcome this glaring fact, Garrison argues that he obtained his EEOC file solely to look for DeCoursey's notes and that the right to sue letter "was on page 178 of 186 pages". This argument, however, is not enough. It is beyond dispute that he both actually possessed a copy of his right to sue letter and that knew one had been issued. The excuse that the file was too big or that the right to sue letter was not highlighted for him is undermined by his stated knowledge of the EEOC's actions. His failure to look for or read the letter speaks more to his diligence in pursuing this matter.[11]

## B. The Court Will Not Equitably Toll the Statute of Limitations

The record is devoid of any equitable considerations which would allow the court to toll the 90 day statute of limitations period. Although the court must liberally construe the statute of limitations in determining when the time begins to run, it correspondingly must strictly construe the end period. *See, e.g., Mosel,* 789 F.2d at 253 (citation omitted). There are specific situations in which a court can equitably toll the statute: (1) where a defendant actively misled a plaintiff regarding a claim, (2) where a plaintiff has, in "an extraordinary way," been prevented from asserting his rights, or (3) where a plaintiff timely asserted a claim but in the wrong forum. *See, e.g., Seitzinger v. Reading Hosp. and Med. Ctr.,* 165 F.3d 236, 240 (3d Cir.1999) (citing cases). In addition, the court cannot even consider equitably tolling the statute of limitations unless the

---

11. *See infra* section IVB regarding Garrison's diligence.

plaintiff exercised due diligence in pursuing his claim. *See, e.g., Baldwin,* 466 U.S. at 151, 104 S.Ct. 1723; *cf. Wilson v. Dept. of Veterans Affairs,* 65 F.3d 402, 404 (5th Cir.1995) (stating that "we have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights") (internal citations and quotations omitted).

■ The record demonstrates that Garrison was not diligent in pursuing his claim. Subsequent to his conversation with DeCoursey regarding his right to sue letter (but before March 23, 1999), Garrison spoke to her about obtaining his EEOC file under FOIA. Although he claims that he had not received his right to sue letter at this time, had difficulty reaching DeCoursey, and a few weeks had passed since she promised to mail him a copy, he did not take the opportunity to ask her again when she would send him his letter. This oversight suggests, at minimum, that Garrison was either unconcerned about obtaining a copy of his right to sue letter, or that he was not diligent in doing so.[12] Courts have found plaintiffs have an obligation to assume a some degree of agency in obtaining a right to sue letter. *See Law v. Hercules, Inc.,* 713 F.2d 691, 692 (11th Cir.1983) (concluding that in case where son put right to sue letter on kitchen table and plaintiff did not see it for a few days, plaintiff's suit was untimely filed since he did not exercise "minimum responsibility" in finding letter).

As the above discussion demonstrates, Garrison was not mislead, was not prevented from asserting his rights, and did not assert his claim in an incorrect forum. On the contrary, he was not diligent in obtaining a copy of his right to sue letter. This is not a case in which a confused plaintiff was kept in the dark. From the record before the court, it appears that Garrison's actions (and inactions) during the period in question resulted more from an acute awareness of the EEOC's decisions and his understanding of his obligations rather than an unawareness of his rights.[13]

## V. CONCLUSION

Even when the court views the evidence before it in a light most favorable to Garrison, it concludes that he had actual notice of the EEOC's determination within the meaning of 42 U.S.C. § 2000e–5(f)(1) at least prior to April 19, 1999.[14] Therefore, Garrison did not timely file his suit against the Town. Finally, the court does not find the existence of any equitable considerations which would permit it to equitably toll the statute of limitations. The court will issue an appropriate order in conjunction with this memorandum opinion.

---

**12.** Garrison's failure is even more apparent in comparison to his several efforts to speak with DeCoursey and obtain his letter. If he were as anxious as he claims to have been, it is curious that after DeCoursey promised to mail him his letter, that he did not at least remind her of her promise or ask when he might expect it.

**13.** Courts have refused to toll the statute of limitations in lesser situations. *See, e.g., Christopher v. General Motors Parts Div.,* 525

F.Supp. 634, 636 (E.D.Mich.1981) (finding that plaintiff's claimed lack of understanding about how to proceed with federal suit did not justify tolling the statute)

**14.** Since statute of limitations questions are determined on a case-by-case basis, the court declines to issue a broad rule regarding notice under 42 U.S.C. § 2000e–5(f)(1) and limits its holding to the facts of this case.