Sonya HUNTER–REED, Plaintiff,

v.

CITY OF HOUSTON, Defendant.

No. CIV.A. H–02–1296.

United States District Court,
S.D. Texas.

Jan. 2, 2003.

Mark E. Roberts, Houston, TX, for plaintiff.

Donald J. Fleming, City of Houston Legal Dept., Houston, TX, for defendant.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant City of Houston's ("the City") Motion to Dismiss (# 5), as converted by the court to a motion for summary judgment to allow consideration of materials outside the pleadings. The City seeks dismissal of Plaintiff Sonya Hunter–Reed's ("Hunter–Reed") claims of race discrimination, racially hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000h–6. Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that summary judgment is warranted.

### I. *Background*

Hunter–Reed, an African–American female, has been employed by the City since 1984. She alleges that in 1998, she worked as a Senior Buyer, a pay grade 22 position. Hunter–Reed claims, however, that she was paid only at the level of pay grade 16. She maintains that she repeatedly asked for reclassification of her pay grade, but she was not given an opportunity to discuss an increase with her superiors. According to Hunter–Reed, non-African-Americans working outside of their classifications received commensurate pay grade increases.

Hunter–Reed further asserts that since January 2000, she has been subjected to a racially hostile work environment because her Division Manager, Harry Stafford ("Stafford"), shared racially motivated jokes from his desk calendar with her on a daily basis. In addition, she contends that on July 26, 2000, she applied for the position of Office Service Manager (PIN # 78754), but a less qualified, non-African-American was selected for the position.

Hunter–Reed maintains that on November 1, 2000, she was reassigned to a position with a lesser pay grade.

According to Hunter–Reed, she also has been retaliated against for engaging in protected activity, which includes, but is not limited to, filing a prior charge of discrimination against the City. She claims that the composition and conduct of a selection panel convened to select a Senior Buyer (Job Announcements # 79909 and # 81007) was devised to deny her the promotion. She further maintains that counseling memoranda issued to her by Stafford in February 2001 were retaliatory in nature and intended to make her ineligible for promotion. Moreover, Hunter–Reed claims that she was the victim of retaliation when she was transferred to work under the supervision of Dorsey Bustamante.

On November 15, 2000, Hunter–Reed filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination and retaliation. On November 16, 2001, the EEOC sent Hunter–Reed, by certified mail, a notice of right to sue addressed to 5807 Larch Leaf Lane, Richmond, Texas 77469. In December 2001, Hunter–Reed called the EEOC to inquire about the issuance of a right-to-sue letter and was informed that such a letter had been sent to her on November 16, 2001. On January 9, 2002, the EEOC sent Hunter–Reed a letter bearing the same address as above, advising her of the following:

> Your copy of the Notice of Right to Sue was mailed to you on *November 16, 2001* by certified mail. However, you failed to pick this letter up from the Post Office and it has been returned to this office.
> Please come by our office at 1919 Smith, Sixth Floor, and ask for [Dinorah G. Gonzales, Office Automation Assistant].

(Emphasis in original). Hunter–Reed claims that she went to the EEOC office on January 9, 2002, and picked up her right-to-sue letter. She signed a copy of the January 9, 2002, EEOC letter and dated her signature January 11, 2002. Hunter–Reed instituted this action on April 5, 2002.

In her complaint, Hunter–Reed asserts claims of racial discrimination, racially hostile work environment, and retaliation under Title VII. The City seeks dismissal of her claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The City argues under Rule 12(b)(6) that Hunter–Reed fails to state a claim upon which relief can be granted because her Title VII claims are time-barred, asserting that she failed to file suit within ninety days after receipt of her notice of right to sue. Because matters outside the pleadings were relied upon by the parties, which appear to be necessary for the resolution of the City's motion, by Order dated July 17, 2002, the Court converted the City's motion to dismiss to a motion for summary judgment and invited the submission of additional materials by the parties.

## II. Analysis

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Marshall v. East Carroll Parish Hosp. Serv. Dist.,* 134 F.3d 319, 321 (5th Cir.1998); *Wenner v. Texas Lottery Comm'n,* 123 F.3d 321, 324 (5th Cir.1997), *cert. denied,* 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir.1986). A material fact is one that might affect the outcome of the suit under governing law. *See Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The moving parties, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing,* 185 F.3d at 505; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321–22; *Wallace,* 80 F.3d at 1047; *Little,* 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Lindsey v. Prive Corp.,* 987 F.2d 324, 327 n. 14 (5th Cir. 1993)); *see Reeves,* 530 U.S. at 150, 120 S.Ct. 2097; *Colson,* 174 F.3d at 506; *Marshall,* 134 F.3d at 321; *Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997), *cert. denied,* 525 U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Hart v. O'Brien,* 127 F.3d 424, 435 (5th Cir.1997), *cert. denied,* 525 U.S. 1103, 119 S.Ct. 868, 142 L.Ed.2d 770 (1999). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *Palmer v. BRG of Ga., Inc.,* 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990); *see Christopher Vill. Ltd. P'ship v. Retsinas,* 190 F.3d 310, 314 (5th Cir.1999); *Samuel v. Holmes,* 138 F.3d 173, 176 (5th Cir.1998); *Marshall,* 134 F.3d at 321. The evidence is construed "in favor of the nonmoving party, however, only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Houston,* 185 F.3d 521, 525 (5th Cir.1999);

accord *Little,* 37 F.3d at 1075 (*"[w]e do not ... in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."*) (emphasis in original) (citing *Lujan v. National Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

Furthermore, " 'only *reasonable* inferences can be drawn from the evidence in favor of the nonmoving party.' " *Eastman Kodak Co. v. Image Tech. Servs., Inc.,* 504 U.S. 451, 469 n. 14, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992) (emphasis in original) (quoting *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1012 (2d Cir.1989)). "If the [nonmoving party's] theory is ... senseless, no reasonable jury could find in its favor, and summary judgment should be granted." *Id.* at 468–69, 112 S.Ct. 2072. The nonmovant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little,* 37 F.3d at 1075; *see Hart,* 127 F.3d at 435; *Wallace,* 80 F.3d at 1047; *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1429 (5th Cir.1996) (citing *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994)); *State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990) (citing *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming,* 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548; *Wenner,* 123 F.3d at 324. "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the nonmoving party's case neces-sarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## B. *Title VII*

■ "A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI–CIGNA,* 975 F.2d 1188, 1191 (5th Cir.1992); *see Maddox v. Runyon,* 139 F.3d 1017, 1021 (5th Cir.1998); *Dao v. Auchan Hypermarket,* 96 F.3d 787, 789 (5th Cir.1996); *Price v. Digital Equip. Corp.,* 846 F.2d 1026, 1027 (5th Cir.1988); *Espinoza v. Missouri Pac. R.R. Co.,* 754 F.2d 1247, 1250 (5th Cir.1985); *see also* 42 U.S.C. § 2000e–5(f). Title VII states:

[I]f the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission ... shall so notify the person aggrieved and within *ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge."

*Espinoza,* 754 F.2d at 1248 (quoting 42 U.S.C. § 2000e–5(f)(1)) (italics in original). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 379 (5th Cir.2002) (citing *Ringgold v. National Maint. Corp.,* 796 F.2d 769, 770 (5th Cir.1986); *Espinoza,* 754 F.2d at 1251); *see Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.,* 209 F.3d 552, 557 (6th Cir.2000).

■ The filing requirements of Title VII, however, are not jurisdictional prerequisites to bringing suit in federal court but are more akin to statutes of limitation and, hence, are subject to the doctrines of waiver, estoppel, and equitable tolling. *See Baldwin County Welcome Ctr. v. Brown,* 466 U.S. 147, 151–52, 104 S.Ct.

1723, 80 L.Ed.2d 196 (1984); *Crown, Cork & Seal Co., Inc. v. Parker,* 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982); *Nilsen v. City of Moss Point,* 701 F.2d 556, 562 (5th Cir.1983). Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances, it is a statutory precondition to the maintenance of any action under Title VII in federal court. *See Taylor,* 296 F.3d at 379; *Dao,* 96 F.3d at 788; *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069–70 (5th Cir.1981); *Smith v. Flagship Int'l,* 609 F.Supp. 58, 61 (N.D.Tex.1985). Like all Title VII filing requirements, the ninety-day filing period is treated as a statute of limitations for all purposes. *See Espinoza,* 754 F.2d at 1248 n. 1; *Nilsen,* 701 F.2d at 562. Thus, dismissal of a Title VII claim is proper where the plaintiff fails to establish that the complaint was filed with the court on a timely basis. *See Smith,* 609 F.Supp. at 61. In federal court, dismissals grounded on the statute of limitations are final adjudications on the merits. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.,* 880 F.2d 818, 819–20 (5th Cir.1989); *Nilsen,* 701 F.2d at 562.

■ Because a failure to comply with the ninety-day requirement jeopardizes a plaintiff's ability to pursue a cause of action under Title VII, there has been much debate regarding the actions that trigger the ninety-day period. "[O]rdinarily the purposes of the Act will be served by commencement of the ninety-day period on the date that notice is received at the address supplied to the EEOC by the claimant." *Espinoza,* 754 F.2d at 1249; *accord Taylor,* 296 F.3d at 379; *Bunch v. Bullard,* 795 F.2d 384, 387–88 (5th Cir. 1986). It is generally recognized that the ninety-day period begins to run "on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Ringgold,* 796 F.2d at 770. The general rule has been stated as:

> the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period unless the claimant, through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice.

*Espinoza,* 754 F.2d at 1250. As noted by the Fourth Circuit, the Fifth Circuit has rejected the rigid application of the actual receipt rule "in favor of a flexible rule which requires a case-by-case examination to determine if equitable tolling of the filing period is appropriate." *Harvey v. City of New Bern Police Dep't,* 813 F.2d 652, 653 (4th Cir.1987) (citing *Espinoza,* 754 F.2d at 1250–51); *see Peters v. Transocean Offshore, Inc.,* No. CIV. A. 00–0994, 2000 WL 1876097, at *3 (E.D.La. Dec.22, 2000).

■ When a date of receipt is not provided, however, a "conclusory allegation that [the] complaint was timely filed is insufficient to preclude dismissal." *Taylor,* 296 F.3d at 379. Therefore, "[w]hen the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Id.* (citing *Lozano v. Ashcroft,* 258 F.3d 1160, 1164–65 (10th Cir.2001) (recognizing prior application of both three- and five-day presumptions)); *see Baldwin County Welcome Ctr.,* 466 U.S. at 148 n. 1, 104 S.Ct. 1723 (presuming plaintiff received right-to-sue letter three days after mailing based on FED. R. CIV. P. 6(e)); *Graham–Humphreys,* 209 F.3d at 557 (utilizing rebuttable presumption that notice was received within five days of mailing); *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236,

239 (3d Cir.1999) (applying three-day presumption); *Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525–26 (2d Cir.1996) (finding three-day presumption rebutted); *Rao v. Baker,* 898 F.2d 191, 195–96 (D.C.Cir.1990) (noting applicability of five-day rebuttable presumption of receipt); *Banks v. Rockwell Int'l N. Am. Aircraft Operations,* 855 F.2d 324, 326 (6th Cir. 1988) (applying a five-day presumption of receipt of right-to-sue letter). In *Taylor,* while not explicitly adopting a seven-day period, the Fifth Circuit applied the presumption that the right-to-sue letter at issue was received on or prior to the seventh day after mailing and affirmed the dismissal of the case because it was brought on the eighth day. *See* 296 F.3d at 380.

■ Furthermore, "in circumstances where a plaintiff does not claim her certified mail, the ninety-day period is triggered upon delivery of the notice of the certified mail, not when the letter is actually picked up." *Lee v. Henderson,* 75 F.Supp.2d 591, 593 (E.D.Tex.1999) (citing *Vogel v. American Home Prods. Corp. Severance Pay Plan,* 122 F.3d 1065, 1997 WL 577578, at *2 (4th Cir.1997); *Nelmida v. Shelly Eurocars, Inc.,* 112 F.3d 380, 384–85 (9th Cir.), *cert. denied,* 522 U.S. 858, 118 S.Ct. 158, 139 L.Ed.2d 103 (1997); *Watts–Means v. Prince George's Family Crisis Ctr.,* 7 F.3d 40, 42 (4th Cir.1993); *Zillyette v. Capital One Fin. Corp.,* 1 F.Supp.2d 1435, 1439–40 (M.D.Fla.1998), *aff'd,* 179 F.3d 1337 (11th Cir.1999); *Middleton v. Gould,* 952 F.Supp. 435, 440 (S.D.Tex.1996)); *accord Graham–Humphreys,* 209 F.3d at 558–60 (finding that plaintiff constructively received right-to-sue letter on the day the letter carrier deposited the first official notification at plaintiff's last known address that a certified letter awaited her at the post office). Requiring actual pickup "would allow some plaintiffs 'open-ended time extension, subject to manipulation at will.'" *Watts–*

*Means,* 7 F.3d at 42 (quoting *Harvey,* 813 F.2d at 654); *accord Graham–Humphreys,* 209 F.3d at 560 ("[a]ny more lenient rule would illicitly license a Title VII claimant to indefinitely extend limitations by avoiding acceptance of an RTS notice"); *Lee,* 75 F.Supp.2d at 593–94; *Middleton,* 952 F.Supp. at 440 n. 2; *see also Zillyette,* 1 F.Supp.2d. at 1440.

■ The same presumptive period of delivery applies even if the right-to-sue letter is ultimately returned to the EEOC without being claimed by the plaintiff. *See Graham–Humphreys,* 209 F.3d at 560. As the Sixth Circuit explained in the context of a five-day presumption period:

> [T]he mailing and delivery, presumptively accomplished within the five-day period to accommodate delivery, of an RTS announcement to the plaintiff's address of record, *even if erroneous,* actuates the limitations period after expiration of the five day grace period, even if the RTS notice was ultimately returned to the EEOC as undeliverable or unclaimed.

*Id.* (emphasis in original). Hence, absent any evidence to the contrary, the limitation period in this case was triggered on November 23, 2001, when Hunter–Reed's right-to-sue letter was presumptively available for pickup at the post office upon the passage of seven days after issuance. *See Taylor,* 296 F.3d at 380. Limitations, therefore, would have expired on February 21, 2002, ninety days later. *See id.* Hunter–Reed, however, did not file her complaint until April 5, 2002, forty-three days late.

■ In any event, when the plaintiff receives actual notice by other means, such as being told by an EEOC representative that a right-to-sue letter has been issued, the ninety-day limitations period commences without regard to whether the letter is actually received at that time. *See Cook v. Providence Hosp.,* 820 F.2d

176, 179–80 (6th Cir.1987); *Blackett v. Pathmark Stores, Inc.*, No. 01 Civ. 6913(DLC), 2002 WL 31385817, at *4 (S.D.N.Y. Oct.21, 2002); *Garrison v. Town of Bethany Beach*, 131 F.Supp.2d 585, 589–90 (D.Del.2001); *Thornton v. South Cent. Bell Tel. Co.*, 906 F.Supp. 1110, 1117 (S.D.Miss.1995); *McCollough v. CSX Transp. R.R. Co.*, No. Civ. A. 94–3102, 1995 WL 141494, at *2 (E.D.Pa. Mar.31, 1995); *Beggan v. New York Times*, No. 91 Civ. 8343(LJF), 1992 WL 111090, at *1 (S.D.N.Y. May 6, 1992). "Although the notice by the EEOC may take the form of a right to sue letter, there is no such statutory requirement." *Garrison*, 131 F.Supp.2d at 589; *accord McCullough*, 1995 WL 141494, at *2. The statute merely requires the EEOC to " '*notify* the person aggrieved' " of the dismissal of a charge; it does not direct that notice be received in any specific manner. *Garrison*, 131 F.Supp.2d at 589 (quoting 42 U.S.C. § 2000e–5(f)(1)) (emphasis in original); *see McCullough*, 1995 WL 141494, at *2.

■ Hence, "[w]here the EEOC has orally notified a complainant that it found no evidence of discrimination and that her charge had been dismissed, the claimant is not entitled to equitable tolling of the 90–day filing period." *Thornton*, 906 F.Supp. at 1117 (citing *Cook*, 820 F.2d at 178, 180 (concluding that allowing plaintiff to claim lack of knowledge of EEOC determination where EEOC official told plaintiff her file was closed and right-to-sue notice had been issued would be an "illogical, absurd result")); *see Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir.2000) (holding "[a]s a matter of law, receipt of a second EEOC Notice does not constitute grounds for equitable tolling where a party has actual knowledge of the first Notice"); *Ebbert v. DaimlerChrysler Corp.*, 192 F.Supp.2d 303, 309 (D.Del.2002) (same). Similarly, in this case, permitting Hunter–Reed "to evade the 90 day statute of limitations by claiming that only actual, physi-cal possession of a right to sue letter is required would nullify Congressional intent apparent in 42 U.S.C. § 2000e–5(f)(1) and upset the balance of interests." *Garrison*, 131 F.Supp.2d at 590. If, as Hunter–Reed claims, she did not gain actual knowledge of the issuance of the notice of right to sue until sometime in December 2001, then the ninety-day period would have run on or before March 31, 2002, making her April 5, 2002, complaint untimely.

■ The United States Supreme Court has addressed the issue of equitable tolling of statutes of limitation in the context of an action brought under the Federal Employer's Liability Act. The Court explained:

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require vindication of the plaintiff's rights.

*Burnett v. New York Cent. R.R. Co.*, 380 U.S. 424, 428, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965) (quoting *Order of R.R. Tels. v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944)). The plaintiff bears the burden of demonstrating a factual basis to justify

tolling of the limitations period. *See Hood v. Sears, Roebuck & Co.*, 168 F.3d 231, 232 (5th Cir.1999); *Conaway v. Control Data Corp.*, 955 F.2d 358, 362 (5th Cir.), *cert. denied*, 506 U.S. 864, 113 S.Ct. 186, 121 L.Ed.2d 131 (1992); *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988), *cert. denied*, 488 U.S. 1007, 109 S.Ct. 789, 102 L.Ed.2d 781 (1989); *Snooks v. University of Houston, Clear Lake*, 996 F.Supp. 686, 689 (S.D.Tex.1998).

The Supreme Court has outlined several criteria to consider when evaluating a request for equitable tolling:

first, whether the EEOC provided adequate notice of the complainant's right to sue; second, whether a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon; third, whether the court itself has led the plaintiff to believe that she has done everything required of her; and fourth, whether affirmative misconduct on the part of the defendant lulled the plaintiff into inaction.

*St. Louis v. Texas Worker's Comp. Comm'n*, 65 F.3d 43, 47 (5th Cir.1995), *cert. denied*, 518 U.S. 1024, 116 S.Ct. 2563, 135 L.Ed.2d 1080 (1996) (citing *Baldwin County Welcome Ctr.*, 466 U.S. at 151, 104 S.Ct. 1723); *see Espinoza*, 754 F.2d at 1251. Equitable tolling has also been allowed "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (citations omitted).

Courts, therefore, have held that the ninety-day period is subject to equitable tolling when the plaintiff was delayed in filing due to circumstances beyond her control, such as incorrect or ambiguous advice of a court clerk or unclear language in the notice. *See Martinez v. Orr*, 738 F.2d 1107, 1111–12 (10th Cir.1984); *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 858–59 (10th Cir.1983); *Wagher v. Guy's Foods, Inc.*, 765 F.Supp. 667, 670 (D.Kan.1991). Similarly, the ninety-day period has been equitably tolled when the plaintiff notified the EEOC of her change of address, but the EEOC mailed the right-to-sue letter to an old address. *See Nelmida*, 112 F.3d at 384–85; *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir.1986); *Espinoza*, 754 F.2d at 1249; *Beale v. Burlington Coat Factory*, 36 F.Supp.2d 702, 704–05 (E.D.Va.1999); *Smith v. Chase Manhattan Bank*, No. 97 CIV. 4507(LMM), 1998 WL 642930, at *4 (S.D.N.Y. Sept.18, 1998).

The Fifth Circuit has not recognized a plaintiff's excusable ignorance of the defendant's discriminatory act as a basis for equitable tolling. *See Amburgey v. Corhart Refractories Corp., Inc.*, 936 F.2d 805, 810 n. 14 (5th Cir.1991) (citing *Barrow v. New Orleans S.S. Ass'n*, 932 F.2d 473, 477–78 (5th Cir.1991)). The court, however, has held equitable tolling to apply in a variety of situations, including: (1) the pendency of an action between the same parties in the wrong forum; (2) the plaintiff's unawareness of facts giving rise to a claim because of the defendant's intentional concealment; and (3) the EEOC's misleading of the plaintiff about the nature of her rights. *See Hood*, 168 F.3d at 232; *Amburgey*, 936 F.2d at 810 n. 14; *Blumberg*, 848 F.2d at 644; *Chappell v. Emco Mach. Works Co.*, 601 F.2d 1295, 1302–03 (5th Cir.1979). The Fifth Circuit has further indicated that other situations might similarly merit the application of equitable tolling. *See Hood*, 168 F.3d at 232; *Blumberg*, 848 F.2d at 644. None of these circumstances, however, exists here.

In response to the City's motion to dismiss, Hunter–Reed asserts that she timely filed suit because she did not receive the right-to-sue letter until *after* January 6, 2002. She argues that equitable tolling of the ninety-day limitation period should apply because her failure to receive the EEOC notice was through no fault of her own. In this regard, Hunter–Reed's affidavit, attached to her June 28, 2002, response to the City's motion to dismiss, states:

1. When I initially filed my complaint with the EEOC I resided at 7718 Eight Willow, Missouri City, Texas 77489.

2. During the pendency of my claim I moved my residence to 5807 Larch Leaf Lane, Richard [sic], Texas 77469.

3. I notified the EEOC of my change of address on or about April 26, 2001 via facsimile. Correspondence from the EEOC to me indicated that they were aware of the change of my address.

4. After sometime and not hearing from the EEOC in December 2001, I called to request a Right–To–Sue letter. It was at this time I first learned that the EEOC had already sent a Right–To–Sue letter to my prior address. I immediately reminded them of my April 26, 2001 notice of change of address.

5. The EEOC informed me that they would research the matter and would get back to me as to what was needed to be done to proceed with my claim.

6. In early January 2002, I was called by the EEOC and told that I could pick up and sign for a Right–To–Sue letter.

7. On or about January 9, 2002, I went to the EEOC and was given an EECO [sic] letter after signing it.

8. Within ninety days of the issuance of the Right–To–Sue letter I filed a suit.

9. I have in no way acted to delay the pursue [sic] of my cause of action, or acted with any disregard as to any procedure [sic] requirement to pursue my claim.

After the City's motion to dismiss was converted to a motion for summary judgment, Hunter–Reed filed a supplemental response on August 16, 2002, attaching an affidavit that reads, in relevant part:

4. From October 2001 until the first [sic] January of the 2002, I was under the care of my physician for neurological disorders. My condition necessitated that I significantly alter my work habits. At the time I was not completely capable of managing my own affairs.

5. Between November 16, 2001 and January 6, 2002 I did not receive any communication from the EEOC, nor was I aware that any communication was received at my residence.

6. In December [2001] as I began to recover significantly and was able to manage my own affairs, I contacted the EEOC regarding my concern at not receiving a right to sue letter. I was informed by the EEOC that a right to sue letter had been sent to me on November 16, 2001. I informed the EEOC representative that I did not receive any such correspondence.

7. The EEOC investigated the matter and informed me that there had been a mistake, and as a result of that error I had not receive [sic] the right to sue letter.

8. The EEOC investigated my complaint at not receiving the right to sue letter, later advising me that it apparently had been sent to the wrong address. At the direction of the EEOC, on January 9, 2002, I went to their office located in the Mickey Leland

[sic] Building to pick up my right to sue letter.

9. I received a document from the United States Postal Service stating that no certified letter was processed at any of it's [sic] postal stations.

10. Within ninety days of the issuance of the right to sue letter, I filed a lawsuit in Federal Court.

11. I have acted at all times to preserve my cause of action and act as required. I did not knowingly fail to pick up my right to sue letter. The right to sue letter had never been delivered.

In addition, although not referenced in her affidavits, attached as Exhibit 2 to Hunter–Reed's supplemental response to the City's motion to dismiss, is an unsworn, unauthenticated note dated July 31, 2002, purportedly from her treating physician, Jaime Ganc, M.D. ("Dr.Ganc"), stating that she has been under his care since November 29, 2001, and that he did not recommend her to return to work until January 16, 2002. Hunter–Reed also attached as Exhibit 5 to her response a one-page unsworn, unauthenticated document that appears to be a July 30, 2002, "quick search" on a postal service world wide web site of a tracking number. The document states, "Invalid Tracking Number or Tracking Number not found. Please check your entry and try again." According to Hunter–Reed, "[i]t was a combination of errors on the part of the United States Postal Service and EEOC that resulted in the delay of the right-to-sue-letter being received by the Plaintiff. Once notified the Plaintiff acted with all due diligence."

In the case at bar, the undisputed evidence reflects that on November 16, 2001, the EEOC issued Hunter–Reed a right-to-sue letter, bearing the address she provided the EEOC—5807 Larch Leaf Lane, Richmond, Texas 77469. Her own unre-futed affidavits reveal that she contacted the EEOC in December 2001 and learned of the issuance of the right-to-sue letter, but she took no action at that time. It is also undisputed that on January 9, 2002, the EEOC sent a letter to her at the same address, which stated that a right-to-sue letter was mailed to her on November 16, 2001, via certified mail, but she "failed to pick this letter up from the Post Office and it was returned to this [the EEOC's] office." On or about January 11, 2002, Hunter–Reed signed and dated this letter.

■■■ Hunter–Reed fails to demonstrate that her delay in receiving notice was unavoidable due to circumstances beyond her control. The statements in Hunter–Reed's affidavits contending that the EEOC allegedly sent her right-to-sue letter either to her "prior address" or a "wrong address" as well as her allegation that she received a document from the postal service stating that "no certified letter was processed at any of it's postal stations" are hearsay and, as such, are insufficient to defeat summary judgment. See Okoye v. University of Tex. Health Sci. Ctr., 245 F.3d 507, 510 n. 5 (5th Cir. 2001) (citing Fowler v. Smith, 68 F.3d 124, 126 (5th Cir.1995)); Rock v. Huffco Gas & Oil Co., 922 F.2d 272, 283 (5th Cir.1991). Evidence offered for or against summary judgment is "subject to the same standards and rules that govern the admissibility of evidence at trial." Rushing, 185 F.3d at 504 (citing Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 650 n. 3 (5th Cir.1992); Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 175–76 (5th Cir.1990), cert. denied, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993)). Inadmissible hearsay will "not be enough to get past the summary judgment hurdle." Garcia v. Reeves County, 32 F.3d 200, 204 (5th Cir.1994); see Rock, 922 F.2d at 283; see also Evans v. McClain of

*Ga., Inc.,* 131 F.3d 957, 962 (11th Cir. 1997); *Barhan v. Ry–Ron Inc.,* 121 F.3d 198, 202 (5th Cir.1997); *North Am. Specialty Ins. Co. v. Myers,* 111 F.3d 1273, 1283 (6th Cir.1997); *Thomas v. International Bus. Machs.,* 48 F.3d 478, 485 (10th Cir.1995). Hunter–Reed has not shown that the hearsay statements offered in her affidavits come within an exception to the hearsay rule; thus, they do not constitute competent summary judgment evidence. *See Rock,* 922 F.2d at 280, 283.

 Similarly, Hunter–Reed's statement in her affidavit regarding her alleged inability to "completely manage her own affairs" from October 2001, through January 1, 2002, is vague and conclusory and is unsupported by competent evidence in the record. Indeed, the note, purportedly from Dr. Ganc, attached as Exhibit 2 to her response to the City's motion to dismiss, indicates only that Hunter–Reed has been under his care since November 29, 2001, and while it refers to his recommendation that she not return to work until the following January, it contains no suggestion that she was unable to manage her affairs during this time period. Furthermore, the note, which is neither referenced in her affidavits nor in any other document in the summary judgment record is unsworn, unauthenticated, and constitutes inadmissible hearsay. "Unauthenticated documents are improper as summary judgment evidence." *King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) (citing *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 192 (5th Cir.1991)). Likewise, Exhibit 5 to her response, the postal service Internet document, is unsworn and unauthenticated and is not referenced in her affidavit or in any other document in the summary judgment record. Additionally, there is no summary judgment evidence demonstrating that the certified mail number allegedly researched was the same as that associated with the EEOC notice of November 16, 2001, or that certified mail can even be tracked via an Internet search, much less that a query made in July 2002 could track certified mail from November 2001.

 Equitable tolling is not appropriate in the case at bar because, despite the self-serving statements in her affidavits, the record reflects that Hunter–Reed failed to act diligently in preserving her rights. She filed her charge in November 2000 and apparently allowed over a year to elapse without checking on the status of the charge with the EEOC. Moreover, she states in her affidavits that she learned in a telephone call with the EEOC in December 2001 that a right-to-sue letter had been issued, but she did not physically pick it up until January 9, 2002. "That actual, verbal notification was sufficient to put [Hunter–Reed] on notice of the EEOC's determination, and to trigger the statutory time limit for filing a federal action." *Beggan,* 1992 WL 111090, at *1. In any event, upon her actual receipt of the notice, allegedly on January 9, 2002, over a month remained for her to act before the limitations period expired. *See Middleton,* 952 F.Supp. at 440–41. Hunter–Reed, however, did not file suit within the statutory period or even within ninety days after learning of the issuance of the right-to-sue letter from the EEOC. Instead, she waited at least ninety-five days after receiving oral notice in December 2001 and approximately eighty-six days after physically receiving the right-to-sue letter on April 5, 2002.

 "Equitable tolling of a statute of limitations is to be applied sparingly by federal courts, and courts have been generally unforgiving when a late filing is due to claimant's failure to exercise due diligence in preserving his or her legal rights." *Lee,* 75 F.Supp.2d at 594 (citing *Irwin,* 498 U.S. at 96, 111 S.Ct. 453; *Rowe v. Sullivan,* 967 F.2d 186, 192 (5th Cir.

1992)). "One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence." *Baldwin County Welcome Ctr.,* 466 U.S. at 151, 104 S.Ct. 1723; *accord Espinoza,* 754 F.2d at 1250. Here, Hunter–Reed has not provided competent summary judgment evidence warranting application of the doctrine of equitable tolling. *See Baldwin County Welcome Ctr.,* 466 U.S. at 151–52, 104 S.Ct. 1723. As the Fifth Circuit has noted when referring to Title VII's limitations period, "a 'claimant should be required to assume some minimum responsibility for an orderly and expeditious resolution of his dispute,' and should not 'enjoy a manipulable open-ended time extension which could render the statutory limitation meaningless.'" *Espinoza,* 754 F.2d at 1250 n. 3. In short, " ' "equity is not intended for those who sleep on their rights." ' " *Coleman v. Johnson,* 184 F.3d 398, 401–02 (5th Cir.1999), *cert. denied,* 529 U.S. 1057, 120 S.Ct. 1564, 146 L.Ed.2d 467 (2000) (quoting *Fisher v. Johnson,* 174 F.3d 710, 715 (5th Cir.1999), *cert. denied,* 531 U.S. 1164, 121 S.Ct. 1124, 148 L.Ed.2d 991 (2001) (quoting *Covey v. Arkansas River Co.,* 865 F.2d 660, 662 (5th Cir. 1989))). Because Hunter–Reed has failed to demonstrate she acted diligently in preserving her rights, she is not entitled to equitable tolling and her suit under Title VII must be dismissed as untimely.

### III. *Conclusion*

Accordingly, this action is time-barred. Hunter–Reed fails to present a viable ground for equitable tolling. Hence, there remain no material facts in dispute, and the City is entitled to judgment as a matter of law.

IT IS SO ORDERED.