Vinceann TAYLOR, Plaintiff,

v.

**COUNTY BANCSHARES, INC. d/b/a First National Bank of Newton, Defendant.**

**Civil Action No. 1:03 CV 0023.**

United States District Court,
E.D. Texas,
Beaumont Division.

July 14, 2004.

Joseph Y. Ahmad, Ahmad Zavitsanos & Anaipakos, Houston, TX, for Plaintiff.

Mark William Frasher, Lamb Law Firm, Kip Kevin Lamb, Lamb Law Firm, Kenneth Leigh Parker, Lamb Law Firm, Beaumont, TX, for Defendants.

**MEMORANDUM AND ORDER**

CRONE, District Judge.

. Pending before the court is Defendant County Bancshares, Inc. ("County Bancshares") d/b/a First National Bank of Newton's ("FNBN") Motion for Summary Judgment (# 16). County Bancshares seeks summary judgment on plaintiff VinceAnn Taylor's ("Taylor") claim of sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000h–6. Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, the court is of the opinion that County Bancshares's motion for summary judgment should be denied.

**1. Background**

Until October 1, 2001, Newton Bancshares, Inc. ("Newton"), owned and operated FNBN under the direction of President and Chief Executive Officer Rexx Behring and Vice President and Chief Financial Officer Smith Thomasson ("Thomasson"). On January 1, 2001, Thomasson hired Taylor as Vice President of a new profit center called the Special Products Department at a salary of $60,000.00 per year plus benefits.

Thomasson hired Taylor in anticipation of the retirement of Bill McMillan ("McMillan"), who was then in charge of FNBN's Mortgage Department. Defendant disputes, however, that Thomasson ever conveyed that information to officials of County Bancshares. Thomasson created the Special Products Department in order to utilize Taylor's familiarity with federally-guaranteed loans prior to McMillan's retirement. Taylor was expected to sell "special product" loans, such as those provided through the Small Business Administration ("SBA"), the Federal Housing Authority ("FHA"), and the United States Department of Agriculture ("USDA"), while assisting the Mortgage Department

in processing consumer, commercial, and residential loans. The Special Products Department was comprised of only Taylor and her secretary, and there was significant overlap in the work done by the Special Products and Mortgage Departments.

On October 1, 2001, County Bancshares, a holding company, purchased FNBN from Newton. County Bancshares was incorporated to raise the capital needed to open a new bank, but when FNBN became available, County Bancshares seized the opportunity to purchase and manage a bank that was already established in the community. County Bancshares and FNBN operate under the direction of separate boards of directors, although every member of the County Bancshares Board serves on the FNBN Board. After the acquisition, Carlos Vacek ("Vacek") assumed the role of FNBN's President and Chief Executive Officer. Lin Bingham ("Bingham") became Executive Vice President and Chief Financial Officer. While Vacek is the highest ranking officer in the organization, Vacek and Bingham share decision-making responsibilities for FNBN's day-to-day operations.

On October 3, 2001, two days after taking control, Vacek and Bingham met with Taylor and advised her that she was being terminated. They told Taylor that the Special Products Department was being eliminated and that her services were no longer needed. According to Vacek and Bingham, Taylor replied by demanding that McMillan be discharged instead and that she be moved into his position. According to Taylor, she informed Vacek and Bingham that she was working on other types of loans, such as consumer, commercial, and residential, and that she had over $20 million in loans in the pipeline, to which Vacek replied, "We've already made our decision." Taylor also asserts that Vacek refused to discuss transferring her to another position or retaining her as a loan officer in any capacity. Both parties agree that there was no discussion of moving Taylor to any other position within the organization. Taylor further notes that when Vacek was first introduced to a group of employees of the bank, most of whom were female, he remarked, "Do you have any men?" or words to that effect.

After her termination, Taylor filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on February 14, 2002, alleging that she had been terminated because of her gender. On May 15, 2002, the EEOC issued a right-to-sue letter stating that the information provided to the Commission was insufficient to establish a violation and informing Taylor of her right to file a civil lawsuit. Taylor, however, contends that she did not receive that letter or any other notice from the EEOC regarding the disposition of her charge. In early November 2002, Taylor spoke to Gigi Cox ("Cox"), an employee of Taylor's attorney, Joseph Ahmad, asking whether he had received notice from the EEOC. Because he had not, Cox contacted the EEOC on November 15, 2002, and requested the issuance of a right-to-sue letter. On November 18, 2002, an EEOC investigator informed Cox that the right-to-sue letter had been mailed the previous May. The investigator also provided Cox the certified mail tracking number associated with the letter so that Taylor could attempt to ascertain its whereabouts.

On November 21, 2002, Taylor visited a post office to attempt to locate the right-to-sue letter through the tracking number. The postal worker who assisted Taylor was unable to locate the letter and advised Taylor that the Postal Service had no record of any certified mail associated with that number. The postal worker provided Taylor with a computer-generated document which confirmed that there was no

record of the letter. Taylor faxed that information to Cox on November 29, 2002. On December 11, 2002, Cox requested a copy of the letter from the EEOC. The EEOC faxed a copy of the right-to-sue letter to Cox on December 12, 2002. On January 10, 2003, Taylor filed this action, alleging sexual discrimination and seeking (1) back pay, including wages and benefits; (2) reinstatement or front pay, including benefits; (3) attorney's fees, expert fees, and costs; (4) prejudgment and post-judgment interest; and (5) an additional equal amount of back pay as liquidated damages.

## 2. *Analysis*

### A. *Summary Judgment Standard*

■ Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Martinez v. Schlumberger, Ltd.,* 338 F.3d 407, 411 (5th Cir.2003); *Terrebonne Parish Sch. Bd. v. Mobil Oil Corp.,* 310 F.3d 870, 877 (5th Cir.2002); *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999). Where a defendant moves for summary judgment on the basis of an affirmative defense and, thus, bears the ultimate burden of persuasion, "it must adduce evidence to support each element of its defenses and demonstrate the lack of any genuine issue of material fact with regard thereto." *Rushing v. Kansas City S. Ry. Co.,* 185 F.3d 496, 505 (5th Cir.1999), *cert. denied,* 528 U.S. 1160, 120 S.Ct. 1171, 145 L.Ed.2d 1080 (2000) (citing *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1074 (5th Cir.), *cert. denied,* 522 U.S. 915, 118 S.Ct. 299, 139 L.Ed.2d 231 (1997)); *see Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986). To warrant judgment in its favor, the movant " ' "must establish beyond peradventure *all* of the essential elements of the defense." ' " *Martin v. Alamo Cmty. Coll. Dist.,* 353 F.3d 409, 412 (emphasis in original) (quoting *Chaplin v. NationsCredit Corp.,* 307 F.3d 368, 372 (5th Cir.2002) (quoting *Fontenot,* 780 F.2d at 1194)). "A fact is *'material'* if it *'might affect* the outcome of the suit under governing law.' " *Bazan v. Hidalgo County,* 246 F.3d 481, 489 (5th Cir.2001) (emphasis in original) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505); *see Harken Exploration Co. v. Sphere Drake Ins. PLC,* 261 F.3d 466, 471 (5th Cir.2001); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir.1999); *Burgos v. Southwestern Bell Tel. Co.,* 20 F.3d 633, 635 (5th Cir.1994). "An issue is *'genuine'* if it is real and substantial, as opposed to merely formal, pretended, or a sham." *Bazan,* 246 F.3d at 489 (emphasis in original). Thus, a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *accord Harken Exploration Co.,* 261 F.3d at 471; *Merritt–Campbell, Inc.,* 164 F.3d at 961. The moving party, however, need not negate the elements of the nonmovant's case. *See Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th

Cir.1996) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994)).

Once a proper motion has been made, the nonmoving party may not rest upon mere allegations or denials in the pleadings but must present affirmative evidence, setting forth specific facts, to show the existence of a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Rushing*, 185 F.3d at 505; *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075. "[T]he court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348). All the evidence must be construed "in the light most favorable to the non-moving party without weighing the evidence, assessing its probative value, or resolving any factual disputes." *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir.1996); *see Reeves*, 530 U.S. at 150, 120 S.Ct. 2097; *Brown v. City of Houston*, 337 F.3d 539, 540 (5th Cir.2003); *Harken Exploration Co.*, 261 F.3d at 471; *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir.), *cert. denied*, 534 U.S. 951, 122 S.Ct. 347, 151 L.Ed.2d 262 (2001); *Colson*, 174 F.3d at 506. The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in her favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990) (citing *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505); *Martin*, 353 F.3d at 412; *Martinez*, 338 F.3d at 411; *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 507 (5th Cir.), *cert. denied*, —— U.S. ——, 124 S.Ct. 66, 157 L.Ed.2d 30 (2003); *Chaplin*, 307 F.3d at 372; *Harken Exploration Co.*, 261 F.3d at 471.

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to her case on which she bears the burden of proof at trial. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 123 L.Ed.2d 317 (1993); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548; *Wenner v. BDM Enters., Inc*, 123 F.3d 321, 324 (5th Cir.1997), *cert. denied*, 523 U.S. 1073, 118 S.Ct. 1514, 140 L.Ed.2d 667 (1998). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548.

### B. *Ninety–Day Requirement for Filing Complaint*

County Bancshares asserts that Taylor's claim was not timely filed because she waited nearly eight months after issuance of the EEOC right-to-sue letter before filing suit. "A civil action under Title VII must be brought within ninety days of receipt of a right-to-sue letter from the EEOC." *Berry v. CIGNA/RSI–CIGNA*, 975 F.2d 1188, 1191 (5th Cir.1992); *see Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir.2002), *cert. denied*, 537 U.S. 1200, 123 S.Ct. 1287, 154 L.Ed.2d 1041 (2003) *Maddox v. Runyon*, 139 F.3d 1017, 1021 (5th Cir.1998); *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996); *see also* 42 U.S.C. § 2000e–5(f). Title VII states:

> [I]f the Commission dismisses a charge or if, within 180 days after a charge is filed, the Commission has not filed a civil action, "the Commission ... shall so notify the person aggrieved and within *ninety days after the giving of such notice* a civil action may be brought against the respondent named in the charge."

*Espinoza v. Missouri Pac. R.R. Co.*, 754 F.2d 1247, 1248 (5th Cir.1985) (quoting 42 U.S.C. § 2000e-5(f)(1)) (emphasis in original). "This requirement to file a lawsuit within the ninety-day limitation period is strictly construed." *Taylor*, 296 F.3d at 379 (citing *Ringgold v. National Maint. Corp.*, 796 F.2d 769, 770 (5th Cir.1986); *Espinoza*, 754 F.2d at 1251); *see Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 557 (6th Cir. 2000).

■■■ The filing requirements of Title VII, however, are not jurisdictional prerequisites to bringing suit in federal court but are more akin to statutes of limitation and, hence, are subject to the doctrines of waiver, estoppel, and equitable tolling. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151–52, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 349 n. 3, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Although the ninety-day filing requirement is not jurisdictional, in the absence of extenuating circumstances, it is a statutory precondition to the maintenance of any action under Title VII in federal court. *See Taylor*, 296 F.3d at 379; *Dao*, 96 F.3d at 788; *Sessions v. Rusk State Hosp.*, 648 F.2d 1066, 1069–70 (5th Cir.1981). Like all Title VII filing requirements, the ninety-day requirement is treated as a statute of limitations for all purposes. *See Espinoza*, 754 F.2d at 1248 n. 1; *Nilsen v. City of Moss Point*, 701 F.2d 556, 562 (5th Cir.1983). Thus, dismissal of a Title VII claim is proper where the plaintiff fails to prove that the complaint was filed with the court on a timely basis. *See Smith v. Flagship Int'l*, 609 F.Supp. 58, 61 (N.D.Tex.1985). In federal court, dismissals grounded on the statute of limitations are final adjudications on the merits. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 880 F.2d 818, 819–20 (5th Cir.1989); *Nilsen*, 701 F.2d at 562.

■■■ Because a failure to comply with the ninety-day requirement jeopardizes a plaintiff's ability to pursue a cause of action under Title VII, there has been much debate regarding the actions that trigger the ninety-day period. "[O]rdinarily the purposes of the Act will be served by commencement of the ninety-day period on the date that notice is received at the address supplied to the EEOC by the claimant." *Espinoza*, 754 F.2d at 1249; *accord Taylor*, 296 F.3d at 379; *Bunch v. Bullard*, 795 F.2d 384, 387–88 (5th Cir. 1986). It is generally recognized that the ninety-day period begins to run "on the date that the EEOC right-to-sue letter is delivered to the offices of formally designated counsel or to the claimant." *Ringgold*, 796 F.2d at 770. In *Franks v. Bowman Transp. Co.*, the Fifth Circuit noted, however, that "[t]he courts have consistently construed [Title VII] liberally to effectuate its remedial purpose," and opined that "Congress did not intend to condition a claimant's right to sue under Title VII on fortuitous circumstances or events beyond his control which are not spelled out in the statute." 495 F.2d 398, 404 (5th Cir.1974), *rev'd on other grounds*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *see Cooper v. Lewis*, 644 F.2d 1077, 1082, 1084–85 (5th Cir.1981). The general rule has been stated as:

> the giving of notice to the claimant at the address designated by him suffices to start the ninety-day period unless the claimant, through no fault of his own, failed to receive the right-to-sue letter or unless, for some other equitable reason, the statute should be tolled until he actually receives notice.

*Espinoza*, 754 F.2d at 1250. As noted by the Fourth Circuit, the Fifth Circuit has rejected the rigid application of the actual

receipt rule "in favor of a flexible rule which requires a case-by-case examination to determine if equitable tolling of the filing period is appropriate." *Harvey v. City of New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir.1987) (citing *Espinoza*, 754 F.2d at 1250–51); *see Peters v. Transocean Offshore, Inc.*, No. CIV. A. 00–0994, 2000 WL 1876097, at *3 (E.D.La. Dec.22, 2000).

■ When a date of receipt is not provided, however, a "conclusory allegation that [the] complaint was timely filed is insufficient to preclude dismissal." *Taylor*, 296 F.3d at 379. Therefore, "[w]hen the date on which a right-to-sue letter was actually received is either unknown or disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Id.* (citing *Lozano v. Ashcroft*, 258 F.3d 1160, 1164–65 (10th Cir.2001) (recognizing prior application of both three- and five-day presumptions)); *see Baldwin County Welcome Ctr.*, 466 U.S. at 148 n. 1 (presuming plaintiff received right-to-sue letter three days after mailing based on FED. R. CIV. P. 6(e)); *Graham–Humphreys*, 209 F.3d at 557 (utilizing rebuttable presumption that notice was received within five days of mailing); *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir.1999) (applying three-day presumption); *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525–26 (2d Cir.1996) (finding three-day presumption rebutted); *Rao v. Baker*, 898 F.2d 191, 195–96 (D.C.Cir.1990) (noting applicability of five-day rebuttable presumption of receipt); *Banks v. Rockwell Int'l N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir.1988) (applying a five-day presumption of receipt of right-to-sue letter). In *Taylor*, while not explicitly adopting a seven-day period, the Fifth Circuit applied the presumption that the right-to-sue letter at issue was received on or prior to the seventh day after mailing and affirmed the dismissal of the case because it was brought on the eighth day. *See* 296 F.3d at 380. Subsequently, in *Martin*, the Fifth Circuit presumed that the plaintiff received the letter three days after it was mailed, rendering her lawsuit, filed eighty-eight days later, timely. *See* 353 F.3d at 411.

■ Furthermore, "in circumstances where a plaintiff does not claim her certified mail, the ninety-day period is triggered upon delivery of the notice of the certified mail, not when the letter is actually picked up." *Lee v. Henderson*, 75 F.Supp.2d 591, 593 (E.D.Tex.1999) (citing *Vogel v. American Home Prods. Corp. Severance Pay Plan*, 122 F.3d 1065, No. 96–2674, 1997 WL 577578, at *2 (4th Cir. Sept. 18, 1997); *Nelmida v. Shelly Eurocars, Inc.*, 112 F.3d 380, 384–85 (9th Cir.), *cert. denied*, 522 U.S. 858, 118 S.Ct. 158, 139 L.Ed.2d 103 (1997); *Watts–Means v. Prince George's Family Crisis Ctr.*, 7 F.3d 40, 42 (4th Cir.1993); *Zillyette v. Capital One Fin. Corp.*, 1 F.Supp.2d 1435, 1439–40 (M.D.Fla.1998), *aff'd*, 179 F.3d 1337 (11th Cir.1999); *Middleton v. Gould*, 952 F.Supp. 435, 440 (S.D.Tex.1996)); *accord Graham–Humphreys*, 209 F.3d at 558–60 (finding that plaintiff constructively received right-to-sue letter on the day the letter carrier deposited the first official notification at plaintiff's last known address that a certified letter awaited her at the post office). Requiring actual pickup "would allow some plaintiffs 'open-ended time extension, subject to manipulation at will.'" *Watts–Means*, 7 F.3d at 42 (quoting *Harvey*, 813 F.2d at 654); *accord Graham–Humphreys*, 209 F.3d at 560; *Lee*, 75 F.Supp.2d at 593–94; *Middleton*, 952 F.Supp. at 440 n. 2; *see also Zillyette*, 1 F.Supp.2d. at 1440.

■ In any event, when the plaintiff receives actual notice by other means, such as being told by an EEOC representative that a right-to-sue letter has been

issued, the ninety-day limitations period commences without regard to whether the letter has actually been received at that time. *See Hopkins v. United Postal Serv.*, 221 F.3d 1334, No. 99–3225, 2000 WL 923458, at *4 (6th Cir. June 29, 2000); *Cook v. Providence Hosp.*, 820 F.2d 176, 179–80 (6th Cir.1987); *Hunter–Reed v. City of Houston*, 244 F.Supp.2d 733, 741 (S.D.Tex.2003); *Garrison v. Town of Bethany Beach*, 131 F.Supp.2d 585, 589–90 (D.Del.2001); *Thornton v. South Cent. Bell Tel. Co.*, 906 F.Supp. 1110, 1117 (S.D.Miss. 1995). Hence, "[w]here the EEOC has orally notified a complainant that it found no evidence of discrimination and that her charge had been dismissed, the claimant is not entitled to equitable tolling of the 90–day filing period." *Thornton*, 906 F.Supp. at 1117 (citing *Cook*, 820 F.2d at 178, 180); *see Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir.2000).

Here, it is undisputed that a representative of the EEOC signed Taylor's right-to-sue letter on May 15, 2002. Taylor, however, claims that she never received the letter, as detailed in her affidavit. Taylor stated, "I had been expecting a right to sue letter from the EEOC but as of [early November 2002], had not seen the letter." She offers as evidence the computer-generated document provided to her by the Postal Service reflecting that there was no record of the letter. She also proffers Cox's sworn statement to the effect that Taylor's attorney never received the right-to-sue letter. Furthermore, the certified mail receipt, which the EEOC faxed to Cox, contains no postmark or any other information indicating that it was mailed on May 15, 2002, or on any other date. County Bancshares offers no controverting evidence showing that the letter was delivered to Taylor's address, sent to Taylor's attorney, or returned to the EEOC. In addition, County Bancshares proffers no evidence that Taylor was orally notified of

the issuance of the notice of right to sue earlier than November 2002.

■ Hence, there is no evidence before the court demonstrating that Taylor received either actual or constructive notice that the EEOC had issued the right-to-sue letter prior to Cox's conversation with the EEOC on November 18, 2002. Thus, in light of the evidence Taylor has adduced to rebut the presumption of receipt, a fact issue exists as to if and when Taylor received the right-to-sue letter and whether her complaint, filed on January 10, 2003, is timely. Because the court cannot conclude as a matter of law that Taylor received her notice of right to sue prior to November 18, 2002, summary judgment based on the ninety-day limitation period is foreclosed.

### C. *Wrongful Termination Claim*

#### 1. *Burden of Proof*

County Bancshares contends that summary judgment is proper because Taylor has failed to create a genuine issue of material fact concerning her wrongful termination claim. Since 1964, Title VII has provided that "[i]t shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1); *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). "The purposes of Title VII are to achieve equality of employment opportunity and to make persons whole for injuries suffered on account of unlawful employment discrimination." *Floca v. Homcare Health Servs., Inc.*, 845 F.2d 108, 111 (5th Cir.1988) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)).

■ "Title VII discrimination can be established through either direct or circumstantial evidence." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir.2003) (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir.2001), *cert. denied*, 535 U.S. 1078, 122 S.Ct. 1961, 152 L.Ed.2d 1022 (2002)); *see Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000); *accord Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213, 1216 (5th Cir. 1995). "Absent direct evidence of discriminatory intent, as is typically the case, proof via circumstantial evidence is assembled using the framework set forth in the seminal case of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 ... (1973)." *Russell*, 235 F.3d at 222; *see Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Laxton*, 333 F.3d at 578; *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *West*, 330 F.3d at 384 n. 3; *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir.), *cert. denied*, 539 U.S. 926, 123 S.Ct. 2572, 156 L.Ed.2d 602 (2003) (citing *Mooney*, 54 F.3d at 1217). Where, as here, there is no direct evidence of discrimination, the plaintiff must initially establish a *prima facie* case by satisfying a multi-factor test from which a discriminatory motive may be inferred, thus creating a rebuttable presumption of intentional discrimination. *See Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Laxton*, 333 F.3d at 578; *Russell*, 235 F.3d at 222; *Wallace*, 80 F.3d at 1047 (citing *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir.1995)); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir.1994) (citing *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089). " 'To establish a *prima facie* case, a plaintiff need only make a very minimal showing.' "

*Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir.1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir.1985)).

■ Once the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate—but not prove—a legitimate, nondiscriminatory reason for its employment decision. *See Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817; *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 219); *West*, 330 F.3d at 384 (citing *Russell*, 235 F.3d at 222); *Rios v. Rossotti*, 252 F.3d 375, 377 (5th Cir.2001); *Okoye v. University of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir.2001). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.' " *Reeves*, 530 U.S. at 142, 120 S.Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)); *see Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir.2000). "The [employer] must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, '*if believed by the trier of fact,*' would support a finding that unlawful discrimination was not the cause of the employment action." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir.1999) (quoting *Hicks*, 509 U.S. at 507, 113 S.Ct. 2742) (emphasis in original); *accord Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir.2000).

If the employer meets its burden, " 'the *McDonnell Douglas* framework—with its presumptions and burdens'—disappear[s], ... and the sole remaining issue [is] 'discrimination *vel non.*' " *Reeves*, 530 U.S. at 142–43, 120 S.Ct. 2097 (quoting *Hicks*, 509 U.S. at 510, 113 S.Ct. 2742; *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)); *see Laxton*, 333 F.3d

at 578 ("[t]his causes the presumption of discrimination to dissipate"); *West*, 330 F.3d at 385; *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402 (5th Cir.2001); *Russell*, 235 F.3d at 222. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742; *Laxton*, 333 F.3d at 578; *Crawford*, 234 F.3d at 902; *Vadie v. Mississippi State Univ.*, 218 F.3d 365, 372 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113, 121 S.Ct. 859, 148 L.Ed.2d 772 (2001).

"[I]n attempting to satisfy this burden, the plaintiff ... must be afforded the 'opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089); *accord Hicks*, 509 U.S. at 515, 113 S.Ct. 2742; *Laxton*, 333 F.3d at 578. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* (citing *Reeves*, 530 U.S. at 140, 120 S.Ct. 2097; *Wallace*, 271 F.3d at 220). "An explanation is false or unworthy or credence if it is not the real reason for the adverse employment action." *Id.* (citing *Sandstad*, 309 F.3d at 899).

▮ "[I]t is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097 (emphasis in original); *accord Ratliff v. City of Gainesville*, 256 F.3d 355, 360–62 (5th Cir.2001); *Blow v. City of San Antonio*, 236 F.3d 293, 297 (5th Cir.2001).

"Evidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's prima facie case, is likely to support an inference of discrimination without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578; *see Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 223 (citing *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097). "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097; *accord Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385. Hence, a plaintiff need not, as a matter of course, introduce additional, independent evidence of discrimination to avoid summary judgment. *See Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *Ratliff*, 256 F.3d at 362; *Blow*, 236 F.3d at 298; *Russell*, 235 F.3d at 223.

▮ "Thus, a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *accord Laxton*, 333 F.3d at 578; *Ratliff*, 256 F.3d at 361–62. Yet, such a showing by the plaintiff will not always be adequate to sustain a finding of liability. *See Reeves*, 530 U.S. at 148, 120 S.Ct. 2097; *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002). "[A] showing of pretext does not automatically entitle an employee to a judgment as a matter of law." *Russell*, 235 F.3d at 223 (citing *Hicks*, 509 U.S. at 524, 113 S.Ct. 2742). Indeed, "proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct.'" *Reeves*, 530 U.S. at

146, 120 S.Ct. 2097 (quoting *Hicks,* 509 U.S. at 524, 113 S.Ct. 2742).

■ "In other words, '[i]t is not enough ... to *dis* believe the employer; the fact-finder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id.* (quoting *Hicks,* 509 U.S. at 519, 113 S.Ct. 2742) (emphasis in original). Fifth Circuit case law is clear: "discrimination suits still require evidence of discrimination." *Rubinstein v. Administrators of Tulane Educ. Fund,* 218 F.3d 392, 400 (5th Cir. 2000), *cert. denied,* 532 U.S. 937, 121 S.Ct. 1393, 149 L.Ed.2d 316 (2001). "[T]here may be instances, although rare, where a showing of pretext would not be sufficient to infer discrimination." *Russell,* 235 F.3d at 223. "For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097 (citing *Aka v. Washington Hosp. Ctr.,* 156 F.3d 1284, 1291–92 (D.C.Cir.1998)); *see Laxton,* 333 F.3d at 578; *West,* 330 F.3d at 385; *Russell,* 235 F.3d at 223. Ultimately, "[w]hether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case'" and that properly may be considered by the court when ruling on a motion for summary judgment. *Price,* 283 F.3d at 720 (quoting *Reeves,* 530 U.S. at 148–49, 120 S.Ct. 2097); *accord Crawford,* 234 F.3d at 902.

### 2. *Prima Facie Case of Discrimination in Reduction–in–Force Context*

The Supreme Court has stressed that the *McDonnell Douglas* test was "'never intended to be rigid, mechanized, or ritualistic.'" *Johnson v. Louisiana,* 351 F.3d 616, 622 (5th Cir.2003) (quoting *Aikens,* 460 U.S. at 715, 103 S.Ct. 1478); *see Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Because discrimination exists "'in forms as myriad as the creative perverseness of human beings can provide,' certain specific elements do not constitute 'the alpha and omega'" of a *prima facie* case. *Thornbrough,* 760 F.2d at 642 (quoting *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 753–54 (5th Cir.1980)); *see Marshall v. Goodyear Tire & Rubber Co.,* 554 F.2d 730, 735 (5th Cir.1977). Therefore, the Fifth Circuit has modified the *McDonnell Douglas* test in the context of termination cases that involve a general reduction in the employer's workforce. *See Amburgey v. Corhart Refractories Corp., Inc.,* 936 F.2d 805, 812 (5th Cir. 1991); *Thornbrough,* 760 F.2d at 642; *Williams v. General Motors Corp.,* 656 F.2d 120, 127–28 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Reduction-in-force cases are outside the embrace of *McDonnell Douglas,* as reduction-case plaintiffs are simply laid off and thus are incapable of proving the fourth *McDonnell Douglas* prong, *i.e.,* actual replacement by someone outside the protected group. *See Thornbrough,* 760 F.2d at 642.

■ Thus, in situations where the employer reduces its workforce and does not plan to replace the discharged employee, "the fourth element is 'that after [the] discharge, others who were not members of the protected class remained in similar positions.'" *Bauer,* 169 F.3d at 966 (quoting *Vaughn v. Edel,* 918 F.2d 517, 521 (5th

Cir.1990)); *accord Meinecke*, 66 F.3d at 83. In other instances, the Fifth Circuit has found the fourth prong of the *prima facie* case to be altered to require the plaintiff to produce "evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams*, 656 F.2d at 129; *see Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir.2003), *cert. denied*, —— U.S. ——, 124 S.Ct. 1441, 158 L.Ed.2d 89 (2004); *Nichols*, 81 F.3d at 41; *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir.1993); *Amburgey*, 936 F.2d at 812; *Thornbrough*, 760 F.2d at 642.

Hence, in order to establish a *prima facie* case of discrimination in a reduction-in-force case, a plaintiff may show:

(1) she is a member of a protected class;

(2) she was adversely affected by the employer's decision;

(3) she was qualified to assume another position; and

(4) others who were not members of the protected class remained in similar positions.

*See Bauer*, 169 F.3d at 966; *Meinecke*, 66 F.3d at 83; *Vaughn*, 918 F.2d at 521. Alternatively, with regard to the fourth element, the plaintiff can adduce evidence, either circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue. *See Palasota*, 342 F.3d at 576; *Woodhouse v. Magnolia Hosp.*, 92 F.3d 248, 252 (5th Cir.1996); *Nichols*, 81 F.3d at 41; *Amburgey*, 936 F.2d at 812.

In this situation, the reduction-in-force analysis is applicable because no one was hired to fill Taylor's position after her termination. Although some of Taylor's functions, such as selling SBA loans, were later performed by other employees, it is undisputed that the Special Products Department and Taylor's position as Vice President were eliminated. Under the reduction-in-force standard, Taylor has established the first two elements of a *prima facie* case, *i.e.*, she is a member of a protected group and was adversely affected by the employer's decision to terminate her. County Bancshares, however, claims that the other two elements have not been met, contending that Taylor was not qualified for another position and that there was no one outside the protected class who remained in a similar position.

### a. Qualification for Another Position

Taylor argues that she was qualified to assume another position at FNBN, specifically as a loan officer. Several courts have recognized that to be a qualified employee under Title VII, a plaintiff must "prove that [she] was performing [her] job at a level which met [her] employer's legitimate expectations." *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir.1990) (quoting *Huhn v. Koehring*, 718 F.2d 239, 243 (7th Cir.1983)); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1262 (7th Cir.1993); *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014 (1st Cir.1979). The Fifth Circuit, however, has specifically declined to adopt this approach. *See Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir.1988). In *Bienkowski*, the court reasoned that the burden imposed by a definition of "legitimate expectations" cannot be reconciled with the Supreme Court's attempts, in *McDonnell Douglas* and *Burdine*, to simplify presentation of an employment discrimination case. *See id.* at 1505. The court observed that "[p]lacing a plaintiff's 'qualifications' in issue at both the *prima facie* case and pretext stages of a termination case is an unnecessary redundancy." *Id.*

Generally, "unless the employee's job has been redefined, the fact that [she]

was hired initially indicates that [she] had the basic qualifications for the job, in terms of degrees, certificates, skills and experience." *Loeb,* 600 F.2d at 1013 n. 10. Therefore, "a plaintiff challenging [her] termination or demotion can ordinarily establish a prima facie case of ... discrimination by showing that [she] continued to possess the necessary qualifications for [her] job at the time of the adverse action." *Bienkowski,* 851 F.2d at 1505. The court elaborated by interpreting "necessary qualifications" to mean that "the plaintiff had not suffered physical disability or loss of a necessary professional license or some other occurrence that rendered [her] unfit for the position for which [she] was hired." *Id.* at 1505 n. 3. Hence, in this circuit, a *prima facie* case is established once a plaintiff demonstrates that objective employment qualifications have been met. *See Medina v. Ramsey Steel Co.,* 238 F.3d 674, 681 (5th Cir.2001).

■ Subjective criteria are not considered at this stage of the proceeding. *See id.; Lindsey v. Prive Corp.,* 987 F.2d 324, 327 (5th Cir.1993). "Establishing qualifications is an employer's prerogative, ... but an employer may not utilize wholly subjective standards by which to judge the employees' qualifications and then plead lack of qualification" when its employment decisions are challenged as discriminatory. *Crawford v. Western Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980) (citing *Rowe v. General Motors Corp.,* 457 F.2d 348, 358 (5th Cir.1972)); *see Johnson,* 351 F.3d at 622 (quoting *Medina,* 238 F.3d at 681). While "subjective employment criteria may serve legitimate functions, they also provide opportunities for unlawful discrimination." *Lindsey,* 987 F.2d at 327; *see Medina,* 238 F.3d at 681. Therefore, "it is inappropriate to decide as a matter of law that an employee is unqualified because [s]he has failed to meet entirely subjective ... criteria." *Medina,* 238 F.3d at 681; *see Johnson,* 351 F.3d at 622. "Qualifica-

tions" for a job refer to objective factors, such as "degrees, certificates, skills and experience." *Loeb,* 600 F.2d at 1013 n. 10; *see Bienkowski,* 851 F.2d at 1505. Subjective criteria are not considered in the determination of basic qualifications for a job. *See Medina,* 238 F.3d at 681; *see also Lindsey,* 987 F.2d at 327; *Crawford,* 614 F.2d at 1315.

■ Here, Taylor has presented sufficient evidence that she was qualified to serve as a loan officer at FNBN. Taylor was hired as Vice President of a lending department and, during her tenure, she worked on various types of loans that are still offered by FNBN's Mortgage Department. She had substantial prior experience in the financial services field, previously serving as a licensed mortgage broker for over eight years, working in the finance industry for over twenty-three years, and having her own mortgage company for almost six years. Additionally, Thomasson testified at deposition that he hired Taylor with the intention of making her the head of the Mortgage Department upon McMillan's retirement. County Bancshares has offered no evidence that Taylor was any less qualified at the time of her termination than when she was hired.

County Bancshares argues, however, that there was no position available for which Taylor was or could be qualified. Nevertheless, within a few months of Taylor's termination, County Bancshares hired Byron Walker ("Walker") as a "loan trainee." Walker's hiring indicates that there was room for another lending officer at FNBN. It also bolsters Taylor's position by demonstrating that County Bancshares was willing to train someone who might not initially possess all the skills necessary to perform the job of loan officer. County Bancshares maintains, however, that Taylor's alleged mishandling of a securities

offering and mismanagement of her personal finances show that she was unqualified. While these factors may indicate some lack of judgment on the part of Taylor, a proper analysis would require a thorough factual inquiry and subjective determination, which are inappropriate at this point in the proceeding. *See Medina,* 238 F.3d at 681; *Lindsey,* 987 F.2d at 327.

In sum, County Bancshares has not shown that Taylor failed to meet any objective criteria necessary to perform the functions of a loan officer. Furthermore, Thomasson's expectations when hiring Taylor, namely that she would originate loans and eventually assume the helm of the Mortgage Department, are sufficient to give rise to a presumption that Taylor possessed the basic skills necessary to perform the tasks of a loan officer. Taylor, therefore, has established the third element of a *prima facie* case of employment discrimination.

b. *Others Outside the Protected Class Remained in Similar Positions*

■ Finally, Taylor has established the fourth element of a *prima facie* case by showing that Walker, a male, was hired for a similar position shortly after her termination. Although Taylor's official title was "Vice President—Special Products," the record indicates that her duties were more akin to those of a loan officer, who was specifically assigned to solicit "special product" loans as well as other more traditional loans, while awaiting McMillan's retirement. Bingham conceded at deposition that the title "Vice President" is a label commonly used for customer recognition and credibility. Bingham also admitted that the title is not indicative of an employee's responsibilities or rank within the organization. Taylor's contention that she had more generalized responsibilities and expertise is further supported by the fact that she worked on various non-"special product" loans while at FNBN, closing

more loans than McMillan during her tenure.

Moreover, soon after Taylor's departure, Walker was hired as a loan officer trainee with a view toward assuming the position of a loan officer. Walker took over Taylor's responsibilities with respect to SBA loans. Vacek referred to Walker as an "SBA expert" and told Weldon Gibson ("Gibson"), a business development consultant at Lamar University, that he should refer any SBA loans to Walker. Hence, the record indicates that FNBN hired Walker to function as a loan officer with some degree of specialization in "special product" loans. This evidence is sufficient for a factfinder to infer that Walker, a male, was employed during the same time frame in a position substantially similar to the position from which Taylor was terminated. Taylor, therefore, has established a *prima facie* case of discrimination in the reduction-in-force context.

3. *Legitimate, Nondiscriminatory Reason*

■ Because Taylor has established a *prima facie* case of sexual discrimination, to avoid liability, County Bancshares must set forth an adequate, nondiscriminatory reason for her termination. Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See Reeves,* 530 U.S. at 142, 120 S.Ct. 2097; *Hicks,* 509 U.S. at 506–07, 113 S.Ct. 2742; *Laxton,* 333 F.3d at 578; *West,* 330 F.3d at 384; *Sandstad,* 309 F.3d at 897. "The purpose of this step is 'to force the defendant to give an explanation for its conduct, in order to prevent employers from simply remaining silent while the plaintiff founders on the difficulty of proving discriminatory intent.'" *Stratton v. Department for the*

*Aging for the City of N.Y.,* 132 F.3d 869, 879 (2d Cir.1997) (quoting *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1336 (2d Cir.1997), *cert. denied,* 522 U.S. 1075, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998)). The defendant's burden " 'is one of production, not persuasion, involving no credibility assessments.' " *West,* 330 F.3d at 385 (quoting *Russell,* 235 F.3d at 222); *see Sandstad,* 309 F.3d at 898 (quoting *Reeves,* 530 U.S. at 142, 120 S.Ct. 2097). "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998); *accord Williams,* 98 F.3d at 181; *Acevedo–Diaz v. Aponte,* 1 F.3d 62, 67 (1st Cir.1993). Hence, the defendant's burden is relatively light. *See Greenway,* 143 F.3d at 52.

▬▬▬ "If the employer produces any evidence 'which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action,' then the employer has satisfied its burden of production." *Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995) (quoting *Hicks,* 509 U.S. at 507, 113 S.Ct. 2742). "The employer's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that the judge or jurors would act on or approve." *Loeb,* 600 F.2d at 1012 n. 6; *see Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984). Indeed, even an employer's incorrect belief that "an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason." *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1091 (5th Cir.1995) (citing *Little v. Republic Ref. Co.,* 924 F.2d 93, 97 (5th Cir.1991)). The articulated reason, however, must be both "clear and reasonably specific." *Okoye,* 245 F.3d at 513 (quoting *Burdine,* 450 U.S. at 258, 101 S.Ct. 1089); *see Gallo v. Prudential Residential Servs. Ltd. P'ship,* 22 F.3d 1219, 1226 (2d Cir.1994). Furthermore, it " 'must be legally sufficient to justify a judgment for the [employer].' " *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 161 (1st Cir.1998) (quoting *Burdine,* 450 U.S. at 255, 101 S.Ct. 1089); *see Nichols,* 81 F.3d at 41. If the defendant sustains its burden of production, "the presumption raised by the plaintiff's prima facie case essentially disappears, and the plaintiff is left with the ultimate burden which has never left him: that of proving that the defendant intentionally discriminated against him." *Tanik v. Southern Methodist Univ.,* 116 F.3d 775, 776 (5th Cir.), *cert. denied,* 522 U.S. 1015, 118 S.Ct. 600, 139 L.Ed.2d 488 (1997); *accord Reeves,* 530 U.S. at 143, 120 S.Ct. 2097; *Laxton,* 333 F.3d at 578; *West,* 330 F.3d at 385; *Sandstad,* 309 F.3d at 897.

Here, County Bancshares has set forth a legitimate, nondiscriminatory reason for terminating Taylor. Specifically, County Bancshares claims that the Special Products Department was eliminated and Taylor was terminated because Vacek and Bingham lacked the knowledge, experience, capability, and/or desire to remain in that line of business. Hence, County Bancshares has articulated a specific reason which permits the conclusion that such action was not based on a discriminatory animus, thus satisfying County Bancshares' burden of production.

### 4. Pretext for Discrimination

▬▬▬ Because County Bancshares has carried its burden of articulating a legitimate, nondiscriminatory reason for its actions, to prevail, Taylor " 'must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination.' " *Rutherford v. Harris County,* 197 F.3d 173, 184 (5th Cir.1999)

(quoting *Scott v. University of Miss.*, 148 F.3d 493, 504 (5th Cir.1998)); *see Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Hicks*, 509 U.S. at 507–08, 113 S.Ct. 2742; *McDonnell Douglas Corp.*, 411 U.S. at 802, 36 L.Ed.2d 668; *Laxton*, 333 F.3d at 578; *West*, 330 F.3d at 385; *Sandstad*, 309 F.3d at 897. Ultimately, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason" for the employer's decision. *Hicks*, 509 U.S. at 515, 113 S.Ct. 2742 (emphasis in original). The plaintiff must be given a " 'full and fair opportunity to demonstrate,' through presentation of [her] own case and through cross-examination of the defendant's witnesses, 'that the proffered reason was not the true reason for the employment decision,' and that [gender] was." *Id.* at 507–08, 113 S.Ct. 2742 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089). In doing so, "[t]he plaintiff must rebut each nondiscriminatory reason articulated by the employer." *Laxton*, 333 F.3d at 578 (citing *Wallace*, 271 F.3d at 220).

■ While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's prima facie case 'and inferences properly drawn therefrom' " may still be considered " 'on the issue of whether the defendant's explanation is pretextual.' " *Reeves*, 530 U.S. at 143, 120 S.Ct. 2097 (quoting *Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089); *see Laxton*, 333 F.3d at 582. If "the evidence of pretext is substantial, the plaintiff may create a genuine issue of material fact without independent evidence that discrimination was the real reason for the adverse employment action." *Crawford*, 234 F.3d at 903 (citing *Walton*, 119 F.3d at 372); *see Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *Laxton*, 333 F.3d at 585. "The question for summary judgment is whether a rational fact finder could find that the employer discriminated against the plaintiff on the basis of [gender]." *Pratt v. City of Houston*, 247 F.3d 601, 606 (5th Cir.2001), cert. denied, —— U.S. ——, 124 S.Ct. 543, 157 L.Ed.2d 411 (2003) (citing *Hicks*, 509 U.S. at 511, 113 S.Ct. 2742).

### a. Inconsistent Explanations

■ Taylor attempts to show pretext by pointing out shifting or inconsistent renditions of County Bancshares' proffered explanation for her termination. Pretext may be inferred where the defendant has provided inconsistent or conflicting explanations for its conduct. *See Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564, 569 (9th Cir.2004) ("[f]rom the fact that [the employer] has provided conflicting explanations of its conduct, a jury could reasonably conclude that its most recent explanation was pretextual") (citing *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir.2001) ("a factfinder could infer from the late appearance of [the employer's] current justification that it is a post-hoc rationale, not a legitimate explanation for its decision not to hire [the employee]"); *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813 (10th Cir.2000) ("[w]e are disquieted ... by an employer who 'fully' articulates its reasons for the first time months after the decision was made"); *Dominguez–Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir.2000) ("when a company, at different times, gives different and arguably inconsistent explanations [regarding its reasons for terminating an employee], a jury may infer that the articulated reasons are pretextual"); *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir.1996) ("[a]n employer's changing rationale for making an adverse employment decision can be evidence of pretext"), *opinion amended by* 97 F.3d 833 (6th Cir.1996)); *Read v. BT Alex Brown Inc.*, 72 Fed. Appx. 112, 120, No. 02–10191, 2003 WL 21754966, at *7 (5th Cir. July 30, 2003),

cert. denied, —— U.S. ——, 124 S.Ct. 1415, 158 L.Ed.2d 81 (2004) ("[a]n inconsistent reason offered to explain an employee's termination may support a finding that the reason is mere pretext").

In this case, County Bancshares claims Taylor was terminated due to the elimination of the Special Products Department. The reasons given by Vacek and Bingham, FNBN's primary decision-makers, for abolishing the department, however, are directly contradictory. Vacek testified at deposition that the department was eliminated because it was unprofitable. He elaborated, "the record speaks for itself because she did not do what she was— what she told the board she could do, and that was the reason why she was terminated because she was to make these certain type of loans in that department, and she did not—she did not close one red cent of income ..." Bingham, however, stated that the decision stemmed from the new owners' lack of knowledge and experience in selling "special product" loans. Contrary to Vacek, Bingham testified at deposition, "Well, in examining the documents for the purpose of buying the bank, it was obvious that special products didn't make any money, so—but that wasn't the reason I made my decision." While Vacek and Bingham could have relied on independent rationales when reaching the decision to eliminate the Special Products Department, a reasonable factfinder could infer from the inconsistencies that the explanations and the proffered reason for Taylor's termination were pretextual. See Read, 72 Fed.Appx. at 120, 2003 WL 21754966, at * 7; Dominguez–Cruz, 202 F.3d at 432; Thurman, 90 F.3d at 1167.

### b. Falsity of Explanation

Taylor further claims that actions taken by County Bancshares shortly after her termination are inconsistent with its explanation and create an inference that the articulated reason for her discharge is false. "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." Reeves 530 U.S. at 147, 120 S.Ct. 2097. "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination." Hicks, 509 U.S. at 511, 113 S.Ct. 2742.

In this case, County Bancshares' explanation is undermined by the evidence outlined above showing that Walker was hired soon after Taylor's termination to perform similar duties. Additionally, Gibson, a third-party, disinterested witness, stated in his affidavit that Vacek characterized Walker as an experienced banker who would be handling FNBN's SBA loans in the future, dubbing him FNBN's "SBA expert." Gibson also indicated that Vacek repeatedly encouraged him to consider FNBN as an SBA lender and to contact Walker if he had anyone interested in obtaining an SBA loan. In Reeves, the Supreme Court recognized the probative value of evidence supplied by disinterested witnesses, such as Gibson, as opposed to witnesses aligned with a party. See 530 U.S. at 151, 120 S.Ct. 2097. Furthermore, Taylor has produced records showing that FNBN closed at least three SBA loans, with a cumulative amount in excess of $1,000,000.00, subsequent to her departure. This evidence, when viewed in a light most favorable to Taylor, is sufficient to create an issue of fact as to the true motivation behind Taylor's termination.

### c. Other Evidence of Discrimination

██ Taylor has also presented circumstantial evidence which, when combined with evidence suggesting the lack of credibility of County Bancshares' explanation,

supports an inference that County Bancshares' articulated reason for her termination was a pretext for gender discrimination. The record reflects that Taylor was the highest paid woman employed by FNBN and the only woman earning more than $60,000.00 annually; no woman has earned more than $60,000.00 per year following Taylor's termination. Although each of the five men whom Vacek characterized in his deposition as "senior officers" earn more than $60,000.00 per year, neither of the two females referred to as "senior officers," Shirley Hall and Mary Wilson, earn more than $60,000.00. Additionally, no females have ever served on County Bancshares' Board of Directors or on FNBN's Board after the acquisition. Furthermore, although FNBN continues to employ a large number of women, as Vacek noted soon after the acquisition, following County Bancshares' purchase of the bank in 2001, the number of men hired has been significantly greater than the number of women hired. The Equal Opportunity Employment Employer Information Reports, provided by County Bancshares, indicate that between 2001 and 2003, FNBN added only one female employee, while the number of men nearly doubled, increasing from seven to thirteen. Therefore, while this evidence is far from dispositive, when considered in conjunction with Taylor's *prima facie* case and the arguable inconsistencies and falsity of County Bancshares' proffered explanation, it lends support to Taylor's position that County Bancshares' explanation for her termination was actually a pretext for gender discrimination.

## IV. *Conclusion*

Under these circumstances, Taylor has presented sufficient evidence to raise a fact issue as to whether County Bancshares' articulated reason for discharging her was the actual motivation for its decision. Further, she has produced adequate circumstantial evidence to permit a reasonable inference that her gender was a motivating factor in County Bancshares' decision to terminate her employment. Therefore, summary judgment is unwarranted, and Taylor may proceed to trial on her wrongful termination claim under Title VII.

Accordingly, County Bancshares' motion for summary judgment is DENIED.

IT IS SO ORDERED.